## HENDERSON ET AL. v. PHILA. ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 2, 1890.

Re-argued April 6, 1891—Decided October 26, 1891.

[To be reported.]

| | |
|---|---|
| 144 | 461 |
| 177 | 140 |
| 144 | 461 |
| 178 | 377 |
| 144 | 461 |
| 182 | 543 |
| 144 | 461 |
| f 20 SC | ¹164 |
| 20 SC | ¹166 |
| 144 | 461 |
| f 211 | ²164 |
| 144 | 461 |
| f 222 | ¹553 |
| f 224 | 78 |

1. In an action for a loss by fire, caused by sparks from a locomotive engine of a railroad company, the burden is on the plaintiff to prove that the fire was communicated by some engine of the defendant company, and also to prove negligence in the construction or management of the engine; such facts, however, may be established by circumstantial evidence.

2. When the fire is shown to have been caused, or, in the nature of the case could only have been caused, by sparks from an engine which is

known and identified, the evidence should be confined to the condition, management and practical operation of that engine; and testimony tending to prove defects in other engines of the company is irrelevant and inadmissible.

3. If, however, the offending engine is not clearly or satisfactorily identified, it is competent for the plaintiff to prove, in support of the allegation that the fire was caused by defendant's negligence, that the defendant's locomotives generally, or many of them, at or about the time of the occurrence, threw sparks of unusual size causing numerous fires on that part of its road.

4. This class of testimony is exceptional in character at the best, and is admissible only because direct evidence is impracticable; the examination, therefore, should be confined to the negligent operation of the engines at and about the time of the fire, with such reasonable latitude, before and after the occurrence, as is sufficient to make such proofs practicable.

5. Wherefore, it was error in this case to admit an offer to show the repeated emission of sparks of unusual size by defendant's engines, during a period of six months preceding the fire, and also a similar offer, unlimited as to time, under which testimony was received covering periods of two, three and six months, and other testimony not indicating the time to which it referred.

Argued before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ; re-argued before a full Bench.

No. 180 January Term 1890, Sup. Ct.; court below, No. 81 December Term 1888, C. P. No. 3.

On November 13, 1888, Henderson, Hull & Co., Limited, brought trespass against the Philadelphia & Reading Railroad Company, to recover damages for alleged negligence of the defendant company causing the destruction of the plaintiff's mill by fire. Issue.

At the second trial, on November 6, 1889, the following facts were shown:

The plaintiff firm was the owner of a sash and door mill at Montgomery, Lycoming county. The defendant's railroad passed the mill at the rear, and the Pennsylvania railroad ran in front of it. What was known as the shaving-pit, in which were kept shavings and débris from the mill, used for fuel under the boiler, was situated on the side of the mill next the defendant's road, and about twenty-two feet distant from its tracks. Over this pit, and at the height of about thirty feet from the ground, was a covering of wooden slat-work, designed for ventilation.

About six o'clock P. M., on August 10, 1888, the mill was discovered to be on fire, resulting in its destruction. Testimony for the plaintiffs tended to show that the fire commenced in the slat-work; testimony for the defendant, that it started down in the shaving-pit. George Staib, plaintiffs' watchman, testified on their behalf, that one of his duties was to watch passing trains, to see whether they threw any sparks in the vicinity of the mill; that he came to the mill on the day in question about a quarter of an hour before it shut down for the night, the shutting down being at 5.15 P. M., railroad time, or 5.30 mill time; that after his arrival he went out to watch a coal train going north, the engine of which he was unable to identify; that he saw nothing unusual in the working of the engine and saw no sparks thrown; that about a quarter of an hour afterwards he went out to watch another train, drawn by engine No. 72, and he saw no sparks thrown by that engine or anything unusual in its operation. A number of witnesses testified that it was impossible to see sparks in daylight. The fire was discovered soon after the passage of engine No. 72.

Plaintiffs' counsel made the following offers:

"Plaintiffs offer to prove that the property of persons along the line of defendant's road, which passed the property of the plaintiffs destroyed by the fire in question on August 10, 1888, and within twelve miles of plaintiffs' said property, was repeatedly set on fire by unknown and unidentified engines of the defendant, and that the sparks, causing the said fires, emitted by the said engines, exceeded a hickory-nut in size: to be accompanied by evidence of experts showing that engines throwing sparks of the size of hickory-nuts either did not use the most approved spark-arresters in general use, or, if they did, the spark-arresters used were permitted to become defective and out of repair, or were negligently managed by those in charge of them."

Objected to.

By the court: Offer admitted; exception.[1]

"Plaintiffs offer to prove that many of the locomotive engines of the defendant, which they cannot identify and which passed the plaintiffs' mill frequently during a period of six months preceding the fire, habitually threw sparks of the size of a hickory-nut or larger; that defendant's locomotives, during the month of July, 1888, caused a number of fires to property

of individuals along the line and bordering on the said railroad of defendant, within twelve miles of plaintiffs' property; that the sparks which caused some of the said fires were collected at the time of same, and are to be offered in evidence, some of them being of the size of hickory-nuts: to be accompanied by testimony of experts that the most approved spark-arrester, in general use at the time of the fire in question, was what is termed the extended smoke-box; and that the defendant company did not use the extended smoke-box spark-arrester on most of their engines, on the line of their road passing the premises of plaintiffs and property owners mentioned, before and at the time of the firing of the plaintiffs' property; and also by testimony of experts that an engine that threw sparks of the size of hickory-nuts, at the period of said fire and before the said fire, either did not employ the most approved spark-arrester in general use,—the extended smoke-box,—or the spark-arrester used was out of repair and defective, or negligently and improperly used; this to be preceded by additional evidence that we have exhausted every means of ascertaining the number of each of these engines, we having been successful as to one and unsuccessful as to the other."

Objected to.

By the court: Offer admitted; exception.[1]

A number of witnesses, examined as to the subject matter of these offers, testified to having seen sparks of unusual size thrown by unidentified engines. In most instances, their testimony was confined to the period of two or three months immediately preceding the fire at the plaintiffs' mill; in some instances, it covered periods of six months or more, and in one or two instances, the witness did not fix any time. Many of these witnesses when testifying on that subject were asked this question:

" What, if anything, did you see incident to the running of the engines on that road, during two or three months preceding the fire in question?"

The question was in each case objected to, and the objection overruled; exception.[2]

R. M. J. Fowler, a witness for the plaintiffs, having testified that he frequently rode on engine No. 72, during June, July and August, 1888, was asked:

" Q. What did you see during your trips that you have

spoken of, during June, July and August, and speaking of en
gine No. 72, as to the conduct of that engine?"

Objected to, unless it is limited to the time of the fire.

Mr. Rothermel: I have been proving the general negligence
of the company. Now I come down to engine No. 72 and pro-
pose to show that it is negligently constructed, by a man who
rode on it in June, July and August of 1888. He is going to
testify as to its spark-throwing characteristics during that time.
My learned friend says it must be brought down to the day.
It would be impossible to get hold of a man who rode on it
that day.

Mr. Hart: I object to it, unless its action is confined to the
day and the time of the fire. I object to it, because it is not
confined to the time and day in question; and, secondly, be-
cause it is contradictory of the plaintiffs' own witness who tes-
tified affirmatively that nothing unusual occurred at the time it
passed.

By the court: Objection overruled; exception.[6]

The witness then said that he had seen that engine throw
out large quantities of sparks, cinders and streaks of fire, dur-
ing the months named in the offer, and set fire to fields of hay
and grain, etc., along the railroad; and that sparks thrown by
it were as large as three fourths of an inch in diameter.

Testimony for the defendant tended to show that the follow-
ing trains, and no others, passed the plaintiffs' mill on August
10, 1888, within about an hour prior to the fire, the first three
going north and the last one going south, to wit: a coal train
at 4.46 railroad time, or 5.01 mill time; passenger trains, at
5.06 and 5.07 railroad time, or 5.21 and 5.22 mill time; a
freight train, drawn by engine No. 72 at 5.50 railroad time or
6.05 mill time; and that the spark-arrester of engine No. 72
was examined that evening, at the end of its trip, and again on
the next morning and was found to be in perfect order. A
wire netting was produced in court by the defendant as having
been taken from the spark-arresting appliance on that engine,
and experts were examined on each side of the case as to its
sufficiency. Doubts having been raised by the testimony as
to whether this netting could be the one that was taken out of
engine No. 72, the court suggested that the engine be brought
to a convenient place and examined in the presence of the

court and jury. This suggestion was carried out, and it was found that the netting could be fitted into place, in that engine, but when so placed there were certain open spaces at the back part of it, between its edge and a certain pipe against which it was designed to fit, large enough for sparks of considerable size to pass through. The defendant claimed that the existence of these spaces was due to the twisting and bending to which it had been subjected, in taking it out and handling it in court. As to whether such spaces, at the points where these were observed, would cause the emission of large sparks, the testimony was conflicting.

The testimony being closed, the court, REED, J., charged the jury in part as follows:

If the fire was caused by any carelessness on the part of any employee of the plaintiffs, of course the railroad company is not in any way responsible, because the railroad did not cause the fire. If, on the other hand, the railroad did cause the fire, we have to consider a number of points, before we reach a conclusion as to their liability.

In the first place, it is not enough to make the railroad liable, merely because they set fire to that building by sparks from their engine. In the discussion of the law that took place several days ago, counsel for the plaintiffs frankly conceded that the mere fact of the fire taking place along the track was not of itself sufficient on which to base a verdict against the railroad company. Nor, is it enough that a spark from their engine set fire to it, if that spark was such an one that no reasonable precaution on the part of the railroad company could have prevented it. If, in other words, this railroad had, in point of fact, in the engine that went by that mill that afternoon, within a reasonable time during which a spark could have smouldered, the best approved spark-arrester in general use, or if they had a spark-arrester which was thoroughly sufficient for the purpose and did as well as the approved spark-arrester would, the fact that a spark might have escaped and set fire to the building would not render them liable, provided the appliances were in good order. So that you come to a later and other point, and will have to say, in the first place, what locomotive or locomotives could have caused this fire; and secondly, what was the condition and management of those locomotives.

In regard to the engine that passed that place, there is no doubt, I suppose, and I hardly think it is contested, but that locomotive No. 72 passed that mill about ten minutes of six that afternoon.   The passage of that engine agrees with the evidence as to when the fire took place.   As far as the time is concerned, it may have set fire to the mill.   In addition to that, the witness Staib testified to a coal train passing north somewhere near that time, it is said about a quarter of an hour before ; but as Mr. Rothermel argued yesterday, and as both counsel have said, you are not obliged to be excessively strict with witnesses in regard to exact points of time, considering how long it has been since this event occurred.   We must, however, consider, on the witness Staib's testimony, that if he is correct in what he says, that coal train passed by there going north about the time or very near the time No. 72 passed, and probably before No. 72 passed.   In regard to that, the railroad company has produced an amount of evidence here, which, I am frank to say to you, I think is very conclusive ; not conclusive in law, but I think very persuasive of the fact that no coal train went north within an hour of the time that No. 72 passed; that the train that passed nearest to No. 72 was a passenger train called No. 1, which passed about six or seven minutes after five.   Of course, you are at liberty to find, under the evidence in this case, that, supposing for a moment you consider No. 72 as being an engine which could not have caused the fire, and I will speak about that later, it then remains on this evidence, I think you will find, that the only train that was likely to have caused it was the passenger train coming north.

[Now, there is evidence in this case, to which of course you are bound to give all proper weight, and which I have admitted under a ruling of the Supreme Court, that where certain trains are left in uncertainty, the general character of the locomotives and spark-arresters used on that road, and their condition and management, are proper matters of investigation ; and in that connection you have a right and should consider the testimony given by a number of witnesses here as to the large size of certain cinders thrown along this road on this division by other engines, and the destructive effects of those sparks upon property in the neighborhood.   Now, if this was not an

Charge of Court below.

unknown engine, or an unknown coal train, or it was not train No. 1 that went up about six minutes after seven,—if it was not either one of those trains, then the only other train it could have been was train No. 72. Then the question comes as to the condition of train No. 72.

As to that, one witness for the plaintiffs has testified that he had traveled on No. 72, and that he had seen No. 72 throw out at different times large sparks. As against that, you have the evidence of the witnesses for the defendant, who examined the engine the night of the fire, with the view of seeing whether any sparks could have come out, having their attention directed to that one point, and the second examination by thorough, competent people, as the evidence shows, the next day, as to the condition of the spark-arrester, and they testified positively that it was in perfect condition, and that no sparks could have gotten out.

Now, there is another question, as you will remember, in this case, as to whether the spark-arrester exhibited here was the one that really came out of No. 72, and the plaintiffs' witnesses cast a good deal of doubt upon the question as to whether it was really the spark-arrester in No. 72. With a view of ascertaining whether that was so, by fitting it into the engine, we had the examination which took place on Thursday. This spark-arrester was fitted into that engine. You will agree with me, I believe, in thinking that, so far as the front part of that spark-arrester was concerned, there did not seem to be even the slightest possibility of any sparks getting out. That is a view which, I think, you will take, although you are not, of course, obliged to follow any conclusion of mine; but the front part of the spark-arrester was entirely tight, so that no sparks of any unusual size could get out.

Then comes the question which you must consider on the testimony, which is, whether such openings as we saw in the back part of that spark-arrester were sufficient to give rise to danger of the escape of large sparks, so as to cause the fire. Of those openings, such as they were, there was one along our right-hand side, as we went in on the left-hand side of the loco-. motive, which was large enough to pass a foot-rule, folded up, between, and there were openings around the steam-pipe. By bending the hand and bringing it out again you could bring

Charge of Court below.

out the fingers, but I don't think you could do it straight. That is my recollection. The testimony in regard to that is, that even if those holes were large enough to push a spark through, putting in your fingers, the nature of the draught in that engine was [not?] such as to carry that spark past that point.] [3] . . . . .

We have been asked by plaintiffs' counsel to charge:

5. That the right of recovery in this case does not depend upon the plaintiffs' showing that the spark-arrester of any particular engine of the defendant was defective; that if the jury believe from the evidence that the defendant company was habitually negligent in the use of defective spark-arresters, on the line of the road passing the plaintiffs' property, and that said property was fired by any engine of the defendant having a defective spark-arrester, and by reason of the defendant's negligence in maintaining such defective spark-arrester, their verdict must be for the plaintiffs.

Answer: I affirm that point.

Counsel for defendant has asked me to charge:

1. The burden of proof is upon the plaintiffs to show affirmatively that this fire was caused by the negligence of the railroad company; and if you believe that engine No. 72 was not improperly handled while passing the mill just before the fire, and that its spark-arrester was then in a proper condition, and that no other engine passed at or about that time, then there is no evidence of negligence on the part of the railroad company, and your verdict must be for the defendant.

Answer: I affirm that point.

2. If you believe from the evidence of defendant's witnesses that engine No. 72 was the only engine that passed this mill at or about the time of the fire, then all the evidence as to what other engines did at any time becomes immaterial and is not to be considered in making your verdict.

Answer: I affirm that point.

3. As the only witness who testifies to having seen two engines pass the mill also testifies that he saw no sparks, and that he saw nothing improper or irregular in their handling or action, then, if you believe this witness, it is immaterial what these engines or any other engines did at other times, and there is no evidence of negligence on the part of the defendant company.

Charge of Court below.

Answer : That point I decline to affirm.[4]

I will say at this point that in regard to that part of the plaintiffs' testimony, the fact that he saw no sparks, in view of the fact that this was a bright day, as testified to by the witnesses, and that many of the witnesses testified that they could not possibly see sparks in broad daylight, if you find that the light was such that he could not see sparks, then the fact that he saw no spark of itself proves, of course, very little one way or the other.   But the witness Staib also said that there was nothing unusual in the acts of the engine ; that it was not laboring, or, in other words, not puffing, so as to draw an unusual amount of coal out of the fires.   He says the same thing, as I recollect, about the coal train which he said was going up. The defendant is entitled to the benefit of that consideration ; that these were not, according to the plaintiffs' own testimony, engines that were laboring in an unusual way so as to cause sparks to go out, which would not ordinarily have gone out ; it being admitted, I think, on both sides that an engine going up a high grade, or pulling a very heavy load, will use its exhaust in such a quick, jerking way that it will drag fire out which would not come out in the ordinary use of a locomotive. There are, therefore, those two points in regard to Staib's testimony.   But the point that the defendant asks me to charge here I am obliged to refuse.

6. The positive affirmative evidence of the defendant's witnesses as to the condition of the spark-arrester of engine No. 72, just after the fire, based upon an actual physical examination of that appliance, cannot be overthrown by inference or presumption from other testimony not positive and affirmative as to that fact, unless you discredit the witnesses.

Answer : I can only say that I affirm that point with this modification : that the condition of the engine, as testified to by those witnesses, as I have said to you before, is a matter of opinion and judgment, and while they may be testifying to the truth, so far as they understand it, you have a right to differ from them in their view of the condition of the spark-arrester ; but I should say to you that I caution you not to do so, unless you have good reason to think that men who make a business of understanding such a subject as this, and who are experts, have made a mistake, or are telling some untruth.[5]

8. Under all the evidence in this case your verdict must be for the defendant.

Answer: I refuse that point.[7]

The jury returned a verdict for the plaintiffs for $25,800. Upon a rule for a new trial, the court, REED, J., on December 28, 1889, filed the following opinion and decree:

The law of the case was considered so fully upon the trial that it is unnecessary to elaborate the discussion at this time. We think that, in view of the proof offered by the plaintiffs of an unidentified train passing their mill just before the fire, the trial judge was bound, under Gowen v. Glaser, 3 Cent. R. 109, to admit the evidence of the general bad condition or bad management of the defendant's locomotives, as indicated by the quantity of large sparks thrown out. The fact that the defendant's evidence went almost conclusively to show that no such train as described could have passed, does not make the previous admission of the plaintiffs' evidence an error. Nor is it sufficient ground for a new trial, inasmuch as two trains, not identified until the defendant's testimony was put in, passed within a time during which a spark might have smouldered and caused the conflagration, and also because there was other evidence adequate to support a verdict for the plaintiffs. The testimony of the witness Staib, that he noticed nothing irregular in the action of the engines which passed the mill not long before the time of its destruction, and that he saw no sparks, does not justify the conclusion contended for by the defendant that these engines were harmless, and so shut out proof of a general mismanagement by the defendant of its locomotives in the matter of spark-throwing. The admission of evidence, to the effect that within three months previously, and in the neighborhood of the plaintiffs' mill, locomotive No. 72 had thrown from its stack very large sparks, was, we think, proper, for the reason that the condition of that engine, during this entire period, was the subject of keen dispute; and the very fact that the defendant's evidence as to the good order of No. 72 was so strong, makes the admission of any countervailing proof all the more fair. The case of Albert v. Railway Co., 98 Pa. 318, does not lay down a contrary rule; it merely holds that proof, generally, of what other engines might do, would be no evidence " to show that the spark-arrester on engines 21 and 126 were out of order."

Arguments.

Rule for new trial discharged.

—Judgment having been entered, the defendant took this appeal assigning for error:

1, 2. The admission of plaintiffs' offers.[1] [2]

3. The part of the charge embraced in [ ] [3]

4, 5. The answers to defendant's points.[4] [5]

6. The admission of plaintiffs' offer.[6]

7. The refusal of defendant's point.[7]

*Mr. Gavin W. Hart*, for the appellant:

1. The testimony for the plaintiffs having shown that a person specially hired to look at passing engines, did so look and saw nothing irregular in the action of the engines passing the plaintiffs' mill shortly before the fire, and saw no sparks, it was not competent to prove the action of other engines, at other times and places, to establish the charge of negligence. Such proof was received under the case of Gowen v. Glaser, 3 Cent. R. 109 ; but a comparison of the offers made in this case with the offer in that, will show that they are dissimilar. In Gowen v. Glaser the offer included all locomotives, of every description, while no more was offered in the present case than to show that many of the locomotives habitually threw sparks. The admissibility of such an offer as the latter, has been directly negatived in cases hereafter to be cited, where the circumstances were like those of this case. The decisions on spark-arresters may be divided into two categories: (1) those that were given to the jury or should have been; and (2) those that were taken away from the jury or should have been.

2. The decisions in the first category are: Huyett v. Railroad Co., 23 Pa. 373 ; Lackawanna etc. R. Co. v. Doak, 52 Pa. 379 ; Frankford etc. Turnp. Co. v. Railroad Co., 54 Pa. 345 ; Penna. R. Co. v. Stranahan, 79 Pa. 405 ; Phila. etc. R. Co. v. Hendrickson, 80 Pa. 182 ; Penna. Co. v. Watson, 81* Pa. 293 ; Penna. etc. R. Co. v. Lacey, 89 Pa. 458 ; Lehigh V. R. Co. v. McKeen, 90 Pa. 122 ; Phila. etc. R. Co. v. Schultz, 93 Pa. 341 ; Albert v. Railway Co., 98 Pa. 316 ; Gowen v. Glaser, 3 Cent. R. 109. The general result of these decisions is, that in order that the case may be given to the jury, there must appear affirmatively at least one of the following facts : (*a*) that the

engine attacked as the cause of the fire threw unusual sparks at the time of passing; (*b*) such a state of facts, in the absence of direct evidence as to its action when passing, that the only reasonable conclusion is that the engine caused the fire; (*c*) that the engine in fact had no spark-arrester, or one that was defective, such defect causing the fire; (*d*) there must be evidence, not only of a fire, but that the fire was caused by some negligent act, which act must be shown affirmatively, or be the only reasonable inference from the facts so shown.

3. The cases in the other category are: Phila. etc. R. Co. v. Yeiser, 8 Pa. 366; Phila. etc. R. Co. v. Yerger, 73 Pa. 121; Erie Ry. Co. v. Decker, 78 Pa. 293; Jennings v. Railroad Co., 93 Pa. 337; Reading etc. R. Co. v. Latshaw, 93 Pa. 449; Albert v. Railway Co., 98 Pa. 318, cited in the first category on another point: Penna. R. Co. v. Page, 21 W. N. 52. Their general result is embraced in the three following propositions: (*a*) When the engines alleged to be in fault are seen, the inquiry is limited to them and them alone. (*b*) If seen, their actions at any other time are immaterial, and the testimony must be confined to the time in question. (*c*) Even evidence that the spark-arresters are defective is immaterial, if there be no evidence that their action caused the fire. The engines in the present case were identified. As the case of Erie Ry. Co. v. Decker, supra, shows, the identification need not be by number. The time of passing is as much identification as the number would be. The true test, when the engine attacked is seen, is what did it do at the time of seeing it? But one engine, No. 72, passed the mill shortly before the fire, and the evidence shows that it was in perfect condition.

*Mr. P. F. Rothermel, Jr.,* for the appellees:

1. Negligence in the use of defective spark-arresters may be shown by evidence of the emission of sparks that were unusually large in size, or were the cause of unusual and frequent fires along the line of the road: Huyett v. Railroad Co., 23 Pa. 373; Penna. R. Co. v. Stranahan, 79 Pa. 405; Phila. etc. R. Co. v. Hendrickson, 80 Pa. 182; Penna. Co. v. Watson, 81* Pa. 293; Penna. etc R. Co. v. Lacey, 89 Pa. 458; Lehigh V. R. Co. v. McKeen, 90 Pa. 122; Phila. etc. R. Co. v. Schultz, 93 Pa. 341; Gowen v. Glaser, 3 Cent. R. 109. Where the identity

of the engine which caused the fire is known to the plaintiff, such evidence must be confined to that particular engine: Erie Ry. Co. v. Decker, 78 Pa. 293; Jennings v. Railroad Co., 93 Pa. 337; Albert v. Railway Co., 98 Pa. 316; but, where its identity is not known to the plaintiff, the habitual use of defective spark-arresters on the defendant's engines may be shown: Penna. R. Co. v. Stranahan, 79 Pa. 405; Gowen v. Glaser, 3 Cent. R. 109. That the two decisions last cited are not peculiar to the law of Pennsylvania, is shown by a host of authorities: Shear. & Redf. on Negl., § 675; Whart. on Negl., § 871; Thompson on Negl., 159; Grand Trunk R. Co. v. Richardson, 91 U. S. 454, and cases cited.

2. Defendant's counsel in his argument ignores the unidentified engines which were not seen by Staib. Moreover, their claim that seeing an engine is identification, though the person seeing it cannot distinguish it in any way from any other engine on the road, is not supported by the cases. Inability to identify means inability to produce direct proof as to its conduct, because it is not known. The contention that the offer in the present case differs from that made in Gowen v. Glaser, 3 Cent. R. 109, is not well founded. The evidence held competent and sufficient to show, presumptively, negligent construction and management of unknown engines, in Gowen v. Glaser, supra, and Penna. R. Co. v. Stranahan, 79 Pa. 405, was identical with that offered and received in the case at bar. As those two cases are the only ones in Pennsylvania in which this question has arisen, it would seem unnecessary to discuss the other cases which have been reviewed by defendant's counsel; but a number of the conclusions they have sought to draw from the cases so reviewed, are unwarranted.

OPINION, MR. JUSTICE CLARK:

This action was brought to recover damages for the destruction by fire of the plaintiff's sash and door mill at Montgomery, in Lycoming county. The mill was situate between the Pennsylvania and the Philadelphia & Reading railroads; the former passing in front, and the latter in the rear of the mill. The plaintiffs allege that the fire, which occurred on the tenth day of August, 1888, was communicated from sparks emitted by the defendant's engines. The fire was discovered about

6 or 6.15 o'clock P. M., in the upper part of the ventilator, on the side next the defendant's road. The ventilator was about thirty feet high, and was within twenty-two feet of defendant's road.

The watchman testifies that he came on duty that evening about fifteen minutes before shutting-down time, and that the mill shut down at about 5.30 P. M. mill time, or 5.15 railroad time; that after he came on duty, and before the fire, two trains passed; the first a coal train, going north, drawn by an engine which he could not identify; and, about fifteen minutes later, a freight train, drawn by engine No. 72. The defendant's evidence, however, showed that two other engines, drawing passenger trains, passed this point, one at 5.21 and the other at 5.22 P. M., neither of which engines was identified; indeed, it would seem that the plaintiffs did not know they had passed the mill until the fact was developed in the defendant's testimony. The watchman testifies, further, that it was his duty to take notice of the engines as they passed, to see whether they threw fire from the stacks; that he did watch the engine in front of the coal train, and also engine No. 72, and that he saw no sparks; but that, as it was only six o'clock, and the sun was shining brightly, there may have been sparks emitted which he did not see. The only engine known, and identified was No. 72.

The defendant's contention was that the fire occurred in the pit containing the shavings and débris of the mill, which was immediately underneath the ventilator, and from which the shavings, etc., were supplied as fuel to the furnace. There is a large volume of testimony bearing upon the origin and cause of the fire, upon consideration of which the jury found the fire to have been caused by sparks from the defendant's locomotive engines.

The Philadelphia & Reading Railroad Co., at the time of the injury complained of, was an incorporated company, entitled to the right of way for its engines, etc., upon their track, as located in the rear of the plaintiffs' mill. The company, in the proper use of its road, was therefore in the lawful pursuit of a legitimate business, and if injury resulted to the plaintiffs, it is damnum absque injuria; the company cannot be mulcted in damages except upon proof of negligence: Frankford etc.

Opinion of the Court.

Turnp. Co. v. Railroad Co., 54 Pa. 345 ; Phila. etc. R. Co. v. Hendrickson, 80 Pa. 182.   No person is answerable in damages for the reasonable exercise of a right, when the act is done with a cautious regard for the rights of others, and where there is no ground for the charge of negligence, unskilfulness, or malice.   For the ordinary risks, the landowner is compensated in the damages for right of way ; negligence, therefore, is the gist of the action, and the burden of proof is upon the plaintiffs to establish it.   And as all engines, whether provided with spark-arresters or not, emit sparks, the mere existence of a fire along the line of the road, caused by sparks from the company's engines, is not enough to fasten upon the company the charge either of negligence or want of skill : Phila. etc. R. Co. v. Yeiser, 8 Pa. 366.   In Jennings v. Railroad Co., 93 Pa. 340, this court in a per Curiam opinion, said : " To hold that the fact of the fire having taken place was prima-facie evidence that the spark-arrester was defective, and therefore that the case ought to have been submitted to the jury, would be practically to hold railroad companies liable for all fires ; for it is notorious that no spark-arrester has yet been invented to prevent all sparks ; and a little spark may kindle as large a conflagration as a large one, it depending very much on the dryness or humidity of the atmosphere whether a spark will go out before reaching the ground, and whether what it reaches is in a condition to be easily ignited."   So, also, Phila. etc. R. Co. v. Schultz, 93 Pa. 344 ; Reading etc. R. Co. v. Latshaw, 93 Pa. 449.

Whilst any ordinary fuel may be used in a locomotive engine for the generation of steam, the exercise of this right is subject to the restriction that the latest improvements in its management in general use shall be applied to it : Frankford etc. Turnp. Co. v. Railroad Co., 54 Pa. 345.   It is the duty of the railroad company, in the use of an engine, to use such reasonable precaution as may prevent damage to the property of others ; hence, in Lackawanna etc. R. Co. v. Doak, 52 Pa. 379, where, although there was no direct evidence that the building was fired by the engine, or that sparks were emitted from it at the time, yet the building was near the railroad and was discovered to be on fire when the train passed, and it was shown that the engine had no spark-arrester, it was held that the

question of negligence was properly submitted to the jury. The effect of this ruling was to establish the principle in Pennsylvania that in case of loss by fire, fairly attributable to sparks from a railroad company's locomotive engine, the absence of a spark-arrester is prima-facie evidence of negligence on the part of the company. It is the duty of railroad companies to adopt the best precautions against danger in general use and which experience has shown to be superior and effectual, and to avail themselves of every such known safeguard or generally approved invention to lessen the danger. But mechanical invention and skill have all provided a merely partial protection against the emission of sparks. The mere fact that sparks are thrown from the stack of an engine is not, therefore, evidence in itself of negligence. Where, however, sparks of large size are emitted, which, carried to a long distance, set fire to fields, fences, or buildings, it may, in the present condition of this branch of mechanical invention, well be inferred that the engine is not provided with a sufficient spark-arrester: Phila. etc. R. Co. v. Hendrickson, supra; Pennsylvania Co. v. Watson, 81* Pa. 293 ; Penna. etc. R. Co. v. Lacey, 89 Pa. 458 ; Phila. etc. R. Co. v. Schultz, 93 Pa. 341. Therefore, in an action for the recovery of damages for the destruction of a dwelling seventy-seven feet distant from the railroad, where it was shown that sparks were seen flying from engines to a distance of more than fifty yards, and fences and fields were set on fire in several places, about the same time and at considerable distance from the road, the question of negligence, it was held, should have been submitted to the jury. Although the company gave evidence to the effect that their engines were in good order, and were all provided with good spark-arresters, the unusual distance to which the sparks were borne, and the numerous fires they created, were held to be such evidence to the contrary effect as to have carried the case to the jury: Huyett v. Railroad Co., 23 Pa. 373.

Where the injury complained of is shown to have been caused, or, in the nature of the case, could only have been caused by sparks from an engine which is known and identified, the evidence should be confined to the condition of that engine, its management, and its practical operation. Evidence tending to prove defects in other engines of the company is irrelevant,

and should be excluded: Erie Ry. Co. v. Decker, 78 Pa. 293.
In the case cited, the house of the plaintiff, which stood near
the track of the defendant's railroad, was destroyed by fire
on the sixth of March, 1872. The plaintiff alleged that the
fire originated from sparks thrown from locomotive engine
No. 458, belonging to the defendants, which passed his house
about the time the fire commenced, and that the throwing of
the sparks was from the negligence of the defendants in not
having their apparatus in proper order. Mr. Justice GORDON,
in the opinion of the court, says: "It appears from the evi-
dence, and it was conceded in the argument, that the only
locomotive that could have fired the premises in question was
that numbered 458, in charge of Alfred Carpenter as engineer.
It follows, therefore, that the condition of this engine and its
management were all that were legitimately before the court.
If it was properly constructed as to its furnace and smoke-stack,
and was furnished with a spark-arresting grate of the proper
character, the company would not be liable, though the build-
ing were burned by fire accidentally issuing from it: Lacka-
wanna etc. R. Co. v. Doak, 52 Pa. 379. If, then, this engine
was in a proper condition, it mattered not that every other
engine owned by the company was without the proper appli-
ances for preventing the ejection of coals and sparks. On the
other hand, if this engine was dangerous in this respect, it was
of no consequence that all others upon the road were safe.
Such being the case, it is manifest that all evidence going to
prove defects in engines belonging to this company, other than
the one alleged to have produced the injury complained of,
was irrelevant to the issue pending, and should have been ex-
cluded."

So, in Albert v. Railway Co., 98 Pa. 316, where it appeared
that the plaintiff's loss, if indeed it was caused at all by the de-
fendant's negligence, was attributable entirely to the escape of
sparks at a particular time from one of two particular engines,
both of which were identified, evidence was held inadmissible on
the part of the plaintiff, in order to prove defendant's negli-
gence, to the effect that sparks of unusual size had been emitted
for some time prior to the fire by defendant's engines generally.
" The evidence below," said our Brother PAXSON in that case,
" established the fact that, if the plaintiff's property was de-

stroyed by fire communicated by defendant's locomotive, it was done by engine No. 21 or engine No 126, and by no others. Hence, it is entirely clear that evidence that other engines, upon some other day, threw out an unusual amount of large sparks and live coals, was immaterial, and if received could only have confused and might have misled the jury; nor would it have been evidence to show that the spark-arresters on engines 21 and 126 were out of order." That is to say, for the last sentence is perhaps a little obscure, the fact that other engines, at other times, threw out an unusual amount of large sparks and live coals, would not have been evidence to show that the spark-arresters on engines 21 and 126 were out of order. To the same effect is Jennings v. Railroad Co., supra; Annapolis etc. R. Co. v. Gavitt, 39 Md. 124; and other cases that might be cited.

Of course, the inquiry in all such cases is as to the existence or condition of the spark-arrester at the precise time of the injury; but, in order to make this practicable by proof that it was defective, or threw out sparks of unusual size, a reasonable latitude must be allowed to show its management and operation both before and after. The evidence, however, must be confined to its operation at or about the time of the occurrence. In Phila. etc. R. Co. v. Schultz, supra, it was shown that every day for two weeks a particular engine had been observed to throw out quantities of unusually large sparks, and had fired property along the line of the railroad. In Albert v. Railway Co., supra, it was shown that both engines then in question had done this for some time before the occurrence. To the same effect, also, is Lehigh V. R. Co. v. McKeen, 90 Pa. 122. Testimony tending to show that other fires were set by the same engine about the same time, however, is the proper rule, and is undoubtedly competent: Boyce v. Railroad Co., 43 N. H. 627; Grand Trunk R. Co. v. Richardson, 91 U. S. 454.

But, when the loss or injury is shown to have been caused, or, according to the proof, may have been caused by sparks from an engine unknown and unidentified, or by one of several engines, some of which are unknown and unidentified, then the rule of evidence is necessarily somewhat enlarged. The burden of proof in all such cases, in the first instance, is upon the plaintiff to show that the fire in question was communicated from the defendant's engines. "It devolves upon the plaintiff

to prove by a preponderance of the evidence that the fire was communicated by sparks or cinders from the railway engines. It need not be shown that any particular engine was at fault, but it will be sufficient if the fire is proved to have been set by any engine passing over defendant's railway, and the evidence may be wholly circumstantial; as, first, that it was possible for fire to reach the plaintiff's property from the defendant's engines; and, second, facts tending to show that it probably originated from that cause, and from no other:" 8 Am. & Eng. Enc. of Law, 7.

And, although the rule is otherwise in England and in many of the states, in Pennsylvania, as we have said, the additional burden is upon the plaintiff to prove negligence in the construction or management of the engine. It is not required that the fact be established by direct or positive proof; like any other fact, it may be established by circumstantial evidence ; and, on account of the great difficulty in proving negligence in such cases, any proper evidence from which negligence may be inferred is sufficient to throw the burden on the defendant. "A slight presumption of negligence, however, raised by the plaintiff's case," says Mr. Wharton in his Law of Evidence, § 871, "is sufficient to throw the burden of disproving negligence on the defendant. It is a mistake, as has been elsewhere shown, to suppose that negligence can be only proved by positive and affirmatory evidence. There may be no direct proofs of negligence, yet the way in which an injury is done may be such that negligence is the most probable hypothesis by which it can be explained; and when this is so, the defendant must disprove negligence by showing that he exercised care." In Thompson on Negligence, 159, it is said: "The business of running railroad trains suggests a unity of management, and a general similarity in the construction of the engines. For this reason, and on account of the difficulty of proving negligence in these cases, as before pointed out, the admission of evidence as to other and distinct fires from the one alleged to have caused the injury is permitted. The rule is adopted in England, and prevails in all the states, with one, or possibly two, exceptions. More particularly, it may be stated as follows: That, in actions for damages caused by the negligent escape of fire from locomotive engines, it is compe-

tent for the plaintiff to show that, about the time when the fire in question happened, the trains which the company were running past the location of the fire were so managed, in respect to their furnaces, as to be likely to set on fire objects in the position of the property burned, or to show the emission of sparks or ignited matter from other engines of the defendant passing the spot upon other occasions, either before or after the damage occurred, without showing that they were under the charge of the same driver, or were of the same construction as the one occasioning the damage." The rule is more precisely stated in Shear. & Redf. on Negligence, § 675, as follows: "When the particular engine which caused the fire cannot be fully identified, evidence that sparks and burning coals were frequently dropped by engines passing on the same road upon previous occasions, is relevant and competent to show habitual negligence, and to make it probable that the plaintiff's injury proceeded from the same quarter. If the engine which emitted the fire is identified, then evidence on either side as to the condition of other engines, and of their causing fires, has been held irrelevant, but not so if it is not fully identified."

In our own case of Penna. R. Co. v. Stranahan, 79 Pa. 405, the evidence was that, between 2 and 3 o'clock in the afternoon, the plaintiff's barn, which was about one hundred and fifty feet from the railroad, was discoved to be on fire. Two trains had passed about noon. The fire appeared to have commenced at the fence on the road, and burned over the field to the barn. The sparks falling set fire in many other places along the road. The engine from which the sparks were alleged to have been thrown was unknown and unidentified, and the plaintiff proposed to show by a witness who lived nineteen miles distant on the line of the railroad, the extent to which the locomotives on that road going east, on or about the time of the occurrence, threw sparks from the smokestacks. The testimony was admitted. The witness testified that it was "a common occurrence for the engines to throw sparks, and set fire for rods from the railroad track; they were from a pea to a walnut in size; it appeared worse sometimes than others; they were usually freight trains; sometimes passenger trains," etc. The admission of this testimony was assigned for error here. In a per Curiam opinion, this court said: "This was

Opinion of the Court.

not a case where a certain engine had thrown out the sparks which set fire to plaintiff's barn; but it was where the engine was unknown, yet the cause of the fire was clearly traced to the railroad track, and left the belief that some one of the engines of the defendant had emitted the coals which set the barn on fire. It therefore became necessary to establish the fact by such proof as rendered the belief a certain fact. This could be done, not by the proof that a certain engine emitted the sparks incessantly; for non constat that this particular engine had passed the plaintiff's premises that day. Hence it was necessary to permit the party to show that the emitting of coals and sparks in unusual quantities was frequent, and permitted to be done by a number of engines." In Gowen v. Glaser, 3 Cent. R. 109, the action was for damages for the destruction by fire of the plaintiff's rags, which were scattered in a field adjoining the defendant's road. The allegation was that they were set on fire by sparks from the defendant's engines, but it was not known by what engine. The offer made was as follows: To show that several engines on this road had insufficient spark-catchers; that the engines of this road had repeatedly set fire to property. and to vegetation along that part of the track, very shortly before and very shortly after this occurrence; that sparks as large as a hickory-nut escaped in large quantities from the engines, causing these fires; that, after this fire, what remained of the rags, and what was saved, were spread on the field and watched day and night, and that they were set on fire repeatedly by the engines passing on this road. This offer was received to show by circumstantial evidence that the damage was done by some engine with an insufficient spark-arrester. The jury were to infer from the fact that many of the company's engines, about the time of this occurrence, shortly before and shortly after, emitted sparks of unusual size and quantity, that they were without sufficient spark-arresters; and that, upon consideration of all the evidence, the injury complained of resulted from some one of the engines thus imperfectly constructed. The offer was subsequently enlarged by adding to it a proposition to prove, not that the whole number of defendant's engines were defective, but that the defendant habitually used engines with defective spark-arresters. The offer, as a whole, was admitted, and in

this court was assigned for error. In a per Curiam opinion, this court held that there was no error in the admission of this offer. In Railroad Co. v. Page, 21 W. N. 52, the action was for burning the plaintiff's barn, one hundred fifty feet distant from the track. The evidence was that the company's trains had passed the barn shortly before the fire broke out, emitting cinders, smoke, and small sparks about the size of a pea. There was no evidence, direct or circumstantial, to justify the jury in finding that the sparks were of any larger size. It was further shown that the wind was blowing from the track towards the barn, and that sparks had been known to have been blown that distance. It was not shown that any spark-arrester in use would effectually prevent the emission of sparks of this size. Whilst the evidence was, perhaps, sufficient to satisfy the jury that sparks from the engine had caused the fire, there was no proof of any defect in the spark-arresters ; on the contrary, it was shown they were in perfect condition. There was therefore no proof of negligence or mismanagement; and it was upon this ground that we said it would have been the duty of the court below, if a proper request had been made, to instruct the jury to find a verdict for the defendant.

The same rule of evidence is announced in Grand Trunk R. Co. v. Richardson, 91 U. S. 454. The saw-mill, etc., of Richardson, the plaintiff, was burned on the seventh of June, 1870. The evidence tended to show that the fire was communicated from one of two engines belonging to the company ; the first, drawing a passenger train westerly, passing the mill about half past 1 o'clock in the afternoon ; the other, drawing a freight train easterly, passing it about 4 o'clock the same afternoon. One half to three fourths of an hour after the last-mentioned train passed by the mill, the fire was discovered burning on the westerly end of a covered railroad bridge, from which it was communicated to the saw-mill. The evidence of the plaintiff in error tended to show that the fire was not communicated by either of the engines complained of, but, on the contrary, from a constant fire at the end of the tramway, about one hundred sixty-three feet down the stream, on the same bank of the river, maintained at the westerly end of the railroad bridge for the purpose of burning edgings, stickings, slabs, and other waste material from the saw-mill. After the company

had rested its case, Richardson was allowed to prove that at various times during the same summer, before this fire occurred, some of the company's locomotives in an unusual manner scattered fire in passing the mill and bridge, without showing either that those which it was claimed communicated the fire in question were among the number, or that they were similar in their make, state of repair, or management to said locomotives. The engines were unknown and unidentified. Mr. Justice STRONG, in ruling upon this question, said : " The third assignment of error is that the plaintiff was allowed to prove, notwithstanding objection by the defendant, that at various times during the same summer, before the fire occurred, some of defendant's locomotives scattered fire when coming past the mill and bridge, without showing that either of those which the plaintiff claimed communicated the fire was among the number, and without showing that the locomotives were similar in their make, their state of repair, or management to those claimed to have caused the fire complained of. The evidence was admitted after the defendant's case had closed. But whether it was strictly rebutting or not, if it tended to prove the plaintiff's case its admission as rebutting was within the discretion of the court below, and not reviewable here. The question, therefore, is whether it tended in any degree to show that the burning of the bridge, and the consequent destruction of the plaintiff's property, were caused by any of defendant's locomotives. The question has often been considered by the courts in this country and in England, and such evidence has, we think, been generally held admissible, as tending to prove the possibility and the consequent probability that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company : " citing Piggot v. Railroad Co., 3 Man. G. & S. 229; Sheldon v. Railroad Co., 14 N. Y. 218; Field v. Railroad Co., 32 N. Y. 339; Webb v. Railroad Co., 49 N. Y. 420; Cleaveland v. Railroad Co., 42 Vt. 449 ; Railroad Co. v. McClelland, 42 Ill. 358; Smith v. Railroad Co., 10 R. I. 22; Longabaugh v. Railroad Co., 9 Nev. 271.

In Sheldon v. Railroad Co., 14 N. Y. 218, the plaintiff gave evidence which tended to show that the engines used by the defendant lacked some apparatus which was in use upon some

other locomotive engines, and which rendered the latter less liable to communicate fire to substances at the side of the road than those which were without that apparatus; that, shortly before the fire, sparks and fire had been thrown from the engines used by the defendant, in running its trains through the witness's premises, a greater distance than this building stood from the track of the railroad; and that he had picked up from the track, after the passage of trains, lighted coals more than two inches in length. It was argued by the defendant's counsel that the evidence was too remote and indefinite; that it did not refer to any particular engine, etc. Chief Justice DENIO, in delivering the opinion of the court, said: "This argument is not without force, but at the same time I think it is met by the peculiar circumstances of this case. These engines run night and day, and with such speed that no particular note can be taken of them as they pass. Moreover, there is such a general resemblance among them that a stranger to the business cannot readily distinguish one from another. It will therefore generally happen that when the property of a person is set on fire by an engine, the owner, though he may be perfectly satisfied that it was caused by an engine and may be able to show facts sufficient, legitimately, to establish it, yet he may be utterly ignorant what particular engine did the mischief. It would be practically quite impossible, by any inquiries, to find out the offending engine, for a large proportion of those owned by the company are constantly in rapid motion. The business of running the trains on a railroad supposes a unity of management, and a general similarity in the fashion of the engines and the character of operation. I think, therefore, it is competent prima-facie evidence for a person, seeking to establish the responsibility of the company for a burning upon the track of the road, after refuting every other probable cause of the fire, to show that, about the time when it happened, the trains which the company was running past the location of the fire were so managed in respect to the furnaces as to be likely to set on fire objects not more remote than the property burned. It is presumed to be in the power of the company, which is intimately related with all its engineers and conductors, to controvert the fact sworn to if it is untrue, or, if true in a particular instance, that it was not so in respect to the

Opinion of the Court.

engines which passed the place at a particular time before the occurrence of the fire. The effect of the evidence would only be to shift the onus probandi upon the company, and that, under the circumstances of this case, seems to me to be unavoidable."

We may also refer to the case of Koontz v. Railway Co., (Or.) 43 Am. & Eng. Ry. C. 11, which was an action to recover damages for the destruction of plaintiff's mill by fire falling from one of defendant's locomotives. What particular engine this was the evidence did not disclose, nor was the plaintiff able to ascertain or make proof of its identification from other engines of the company; but, to strengthen the inference that the burning of the mill originated in sparks from this engine, and to show habitual negligence of the officers and agents of the railroad company, he introduced evidence to show that other engines, of like appearance and construction, frequently scattered fire in large quantities, and set other fires along the track, prior and subsequent to the burning complained of. Mr. Justice LORD, in delivering the opinion of the court, said : " On account of this difficulty of identifying a passing engine, especially at night-time, so as to make direct proof of such negligence, and also for the reason, as stated by Mr. Thompson, that the business of running railroad trains supposes a unity of management, and a general similarity in the construction of engines, the admission of evidence as to other and distinct fires from the one alleged to have caused the injury, is permitted. Nor is it requisite that the testimony must also show that the engine which it is claimed caused the fire was one of those which had previously or subsequently scattered fire along defendant's track, but it is enough, as was shown, that it is similar in appearance and construction, and under the same general management. Hence it is quite generally held that evidence that sparks were frequently ejected from passing engines, causing fire along its track, on other occasions, is relevant and competent to show habitual negligence, and to strengthen and sustain the inference that the fire originated from the cause alleged. As the plaintiff must proceed with his evidence in the first instance, the fact that the defendant may be able to prove the identity of the engine, cannot have the effect to make the admission of such evidence error."

Opinion of the Court.

In Field v. Railroad Co., 32 N. Y. 339, the court, in speaking of this quality of evidence, says: "At all events, it showed that a practice was indulged in on the part of the company, about the time and near the place, which would have injured the plaintiff's property, rendering it probable, to a certain degree, that the injury was attributable to that cause."

We have quoted extensively from these authorities to show that the rule of evidence referred to, although, perhaps, comparatively new in its application in Pennsylvania, is the rule generally recognized in this country, not only by the text-writers, but by the courts. It may therefore be considered as settled, in cases of this kind, where the offending engine is not clearly or satisfactorily identified, that it is competent for the plaintiff to prove that the defendant's locomotives generally, or many of them, at or about the time of the occurrence, threw sparks of unusual size and kindled numerous fires upon that part of their road, to sustain or strengthen the inference that the fire originated from the cause alleged. And as, in the case at bar, it is not definitely ascertained to which of the four engines this fire was attributable, three of them being unknown and unidentified, we cannot see how testimony of this character could be excluded.

But the objective point of the inquiry is the condition of the passing engines at the time of the occurrence. It is a matter of little consequence what may have been their condition ten years or two years before that; for the precautions against fire, and the management of the engines, may have been greatly changed within that period. It does not follow because the company, in its official management, may have been negligent in this respect at a time so remote, that it still remains so. The habits of individuals may, in some sense, be spoken of as fixed habits; but the official control and management of the affairs of a railroad company, as well as the various devices used as precautions against danger, are liable to frequent and radical changes. The line must be drawn somewhere. This class of testimony is exceptional in character at the best, and is only admissible because the ordinary sources of proof are inaccessible, and direct evidence impracticable. The rule should not, therefore, be carried beyond the necessity which justifies its admission. If at or about the time

when fires are alleged to have been set by locomotive engines, unknown by number or other means of identification, the company is shown to have been habitually negligent in the equipment or management of its engines, or of many of them, this is a circumstance to be considered in connection with others, not only in determining the origin of the fire, but in deciding whether or not the company was, at the time, in this as in many other instances, negligent in failing to provide suitable precautions against danger. If many of the company's engines, at or about the time, are without sufficient spark-arresters, and frequent fires are kindled in consequence, it may well be inferred, in view of the effectual character of mechanical inventions of this kind, not only that the fire in question originated from this cause, but that it occurred from the habitual negligence of the company in failing to provide sufficient spark-arresters.

Reasonable latitude must, of course, be allowed. The purpose of such proofs would be defeated if they were confined to the exact or precise time of the occurrence. In Stranahan's case, the court admitted proof of the extent to which the various locomotives of the company threw sparks on or about the ninth (sixth) of November, 1867, when the fire occurred. In Gowen v. Glaser, the inquiry was as to sparks thrown and fires set very shortly before and very shortly after the occurrence. In Sheldon v. Railroad Co., supra, the inquiry was restricted to matters occurring about the time and near the place of the fire. In Koontz v. Railway Co., the offer was somewhat more extended in its effects, but we are of opinion that the rule should not be given greater latitude than we have given it.

In the case at bar, the first offer received, and which is the ground of the first specification of error, was as follows : "Plaintiffs offer to prove that the property of persons along the line of defendant's road, which passed the property of the plaintiffs destroyed by the fire in question on August 10, 1888, and within twelve miles of plaintiffs' said property, was repeatedly set on fire by unknown and unidentified engines of the defendant, and that the sparks causing said fires, emitted by the said engines, exceeded a hickory-nut in size : to be accompanied by evidence of experts showing that engines throwing sparks of the size of hickory-nuts either did not use the most ap-

proved spark-arresters in general use, or, if they did, the spark-arresters used were permitted to become defective and out of repair, or were negligently managed by those in charge of them." This offer, it will be seen, was wholly without limit as to time. The testimony received under it was, in some instances, confined to two or three months, in some to six months, and in some the testimony was general, and in such form as not to indicate to what period of time it referred. The second offer was : "To prove that many of the locomotive engines of the defendant, which they cannot identify and which passed the plaintiff's mill frequently during a period of six months preceding the fire, habitually threw sparks of the size of a hickory-nut, or larger ; " etc. We are of opinion that the admission of these offers was error. The examination should be confined to the negligent operation of the engines of the company at or about the time of the fire, with such reasonable latitude, before and after the occurrence, as is sufficient to enable such proofs to be practicable.

What has been said disposes of the first, second, and third assignments of error. The remaining assignments are without merit, and are dismissed.

> The judgment is reversed, and a venire facias de novo awarded.