# William A. Buente and Henrietta Buente, his Wife, *v.* Pittsburg, Allegheny & Manchester Traction Company, Appellant.

*Street railways—Negligence—Duty of motorman.*

A motorman should always be on the alert, especially so when passing a schoolhouse out of which has come a large body of children enjoying their liberty in the careless manner that is usual to them when released from school.

*Street railways—Negligence—Infant—Question for jury.*

It was proper to submit the question of negligence to the jury, when the evidence showed that the trolley car was running at the rate of eight or ten miles an hour, and that, having nothing to do at the time but to watch the street in front and to keep the car under control, the motorman instead of glancing from side to side kept his eyes fixed on the motions of one child on one side of the track to the exclusion of many others on the street.

*Street railways—Contributory negligence of parents—Infant.*

The fact that a parent left an infant aged three with other children in the kitchen in charge of a servant, who left them there to go to a grocery store a square distant, and that in her absence the infant wandered out on the street and railway track, where she was killed, does not disclose such contributory negligence on the part of the parent as would justify taking the question from the jury. This point was discussed and ruled under very similar conditions in Henne v. Railway, 1 Pa. Superior Ct. 311.

*Street railways—Obligations as to improved safety devices.*

It is the duty of railways to adopt the best precautions against danger in general use, and which experience has shown to be superior and effectual, and to avail themselves of every such known safeguard or generally improved invention for lessening danger: Henderson v. Ry., 144 Pa. 461, followed.

It is error, however, to tell a jury " if they fail to adopt anything that a public use has indicated as being proper and which their own common sense if applied would teach them was proper and reasonably necessary, then their failure to adopt that is negligence." The effect of this instruction was to abolish the general rule above mentioned and put in its place an indefinite and uncertain standard.

*Negligence—Street railways—Evidence—City ordinance.*

It is improper to admit as evidence of negligence a city ordinance which requires that all passenger railways shall be provided with " the most

improved modern pilot or safety guard." As between plaintiff and defendant such ordinance cannot be invoked to create a higher standard of care than is fixed by the law of the land. In the case at bar the ordinance was entirely irrelevant, and the effect of its admission tending to affect the minds of the jury, such admission was error on that ground alone.

Argued April 14, 1896. Appeal, No. 4, April T., 1896, by defendant, from judgment of C. P. No. 1, Allegheny County, Sept. Term, 1894, No. 177, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass for killing plaintiff's child. Before SLAGLE, J. Verdict for plaintiff for $750.

The following facts were stated in the opinion of the Superior Court:

On the 18th day of May, 1894, Hazel Buente, the plaintiff's daughter, aged three years, eight months and seven days, in some way escaped from her parent's home, and while attempting to cross the defendant company's street railway track was struck by a passing car and instantly killed. The car, according to the evidence for the plaintiffs, was running at a speed of ten miles an hour, and according to the testimony of the motorman, at about eight miles an hour. The place where the accident happened was near a schoolhouse, and to quote from the testimony of one of the witnesses, "The street was full of children; it was about 8 minutes to 12 o'clock and school just let out and the street was full of children." The motorman was engaged in watching another child at the right hand side of the street, who he feared might get on the track, and paying no attention to the left hand side, where the plaintiff's little girl was standing; he did not see the latter until an instant before she was struck.

The court, SLAGLE, J., charged the jury, inter alia, as follows: [In reference to the construction of the car, the rule of law upon that subject is simply this: persons conducting a business like this are not bound to procure the very best machinery that is possible. The law does not require that; it simply requires they should provide themselves with reasonably safe

machinery for the operation of their road.   But they must provide reasonably safe machinery, and that is to be determined by what is known in reference to such matters.   If there is a better machine in general use in the same line of business they ought to know and they ought to adopt it.   Or if, without any special use or general use, their common sense would teach them that there was a better appliance they ought to adopt it, because people are expected to use ordinary sense, ordinary prudence and care and caution.   If they fail to adopt anything that a public use has indicated as being proper, or which their own common sense, if applied, would teach them was proper and reasonably necessary, then their failure to adopt that is negligence.] [6]

[It appears there was an apparatus that had been used as testified to here, and was in general use prior to this time on these cars.   The general use would indicate that that was ordinarily safe, or at least as safe as they knew.   Mr. Irwin says that was the standard safety appliance in use on most roads here and elsewhere.   On the contrary, it appears that the city of Allegheny had, some time prior to this, passed an ordinance making it necessary for these people to adopt some approved safety appliance.   That ordinance was offered in evidence, not to show that their failure to adopt it was a matter that fixed their liability, because the passage of an ordinance does not determine this action in any way, either one side or the other. The fact that the ordinance was passed does not make it conclusive that their failure to use such appliances as were described was an act of negligence; nor does the passage of the ordinance relieve them from liability for not having complied. But it was in evidence that this ordinance was passed; this company knew that it was passed; they knew there were machines about that time proposed for the use of railway companies. The question is whether or not they exercised proper care to provide themselves with these safety appliances that were within their reach at that time.   Upon that point Mr. Irwin further says they knew that these things were being made; they had been notified by the man who makes the appliances now in use that he was making them, and that they had got some and applied them for the purpose of experimenting as to their usefulness. Whether or not that is negligence, whether it would not be

prudent and proper for them, when these things were suggested, to make trials to ascertain whether there was any real usefulness in them is a question for you. If they failed to adopt them within a proper time, if there were proper safeguards available and they neglected to avail themselves of them, that would be negligence. But if, on the contrary, they were merely experimental, and it had not been determined that these were an improvement upon what they already had in use, then there would be no negligence in it. This is a question for you.] [7]

*Errors assigned* were, (1–5) refusal of defendant's points, first to fifth, reciting same; (6, 7) errors in the general charge, reciting same; (8) error in admitting evidence as follows:

Counsel for plaintiff offers in evidence an ordinance of the city of Allegheny, entitled "An ordinance requiring street car companies to have safety guards or pilots attached to the front end of cars or trucks, and other safety devices; and proper pilots and netting or other modern appliance on the side and between the front of cars and trailers."

Passed by the select and common councils of the city on the 15th of February, 1894, and approved by the mayor, February 21, 1894.

This for the purpose of showing that at the date of the passage of the ordinance and the approval thereof by the mayor such appliances were known and recognized. And also for the purpose of showing a requirement within the police regulations of the city that street car companies, including defendant company, should use such appliances.

Objected to as incompetent and irrelevant.

By the Court: The objection is overruled and bill sealed for defendant. [8]

A. M. Neeper, for appellant.—As to the defendant's nonliability to the plaintiffs, where parents permit children to wander upon the tracks of a railway company unprotected, the following cases are cited: Glassey v. Railway Co., 57 Pa. 172; P. A. & M. Ry. v. Pearson, 72 Pa. 169; Smith v. Hestonville etc. Ry. Co., 92 Pa. 450.

The sixth assignment of error is to the portion of the charge of the court quoted in the assignment wherein the court under-

takes to define the duty of the traction company as to the adoption and use of appliances in the conduct of its business. In the following cases : Lackawanna & Bloomsburg R. R. Co. v. Doak, 52 Pa. 380 ; Meier v. P. R. R., 64 Pa. 230 ; Frankfort & Bristol Turnpike Co. v. Philadelphia & Trenton R. R. Co., 54 Pa. 352.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellee.

OPINION BY WICKHAM, J., July 16, 1896, (after stating the facts as recited in the above statement of facts) :

The learned judge of the court below was asked, through the defendant's first point, to instruct the jury that there was not sufficient evidence of the defendant's negligence to sustain a verdict for the plaintiff. We think the point was properly refused. Although the evidence of negligence was not very strong, there was enough to justify submitting the case ; it was for the jury to say whether the motorman, with an unobstructed view of the street in front, should have confined his attention entirely to the one child on his left, and also whether running a car at the rate of ten miles an hour, if that were the speed, at a place where the street was crowded with children was not negligence in itself. Either or both of these things might have been negligence, and may have caused the accident. The refusal to affirm the defendant's second point was also proper. The court had no right to say that it was not the duty of a reasonably careful, prudent and vigilant motorman, having nothing to do at the time but to watch the street in front and keep his car under control, to glance from side to side, instead of keeping his eyes fixed on one child, to the exclusion of the many others on the street. A motorman "should always be on the alert," Schnur v. Citizens' Traction Co., 153 Pa. 29, and especially so when passing a schoolhouse out of which has just come a large body of children, enjoying their liberty in the careless manner that is usual to them when released from school.

Nor was the defendant entitled to an affirmance of its third or fourth points, which allege such contributory negligence on the part of the plaintiff as should prevent a recovery. The matter of contributory negligence of parents, under circumstances very similar to those shown by the evidence in the present case, is fully discussed in Henne v. Railway Company,

1 Pa. Superior Ct. 311.  On the authority of that case and the Supreme Court decisions therein cited, we feel free to say that to have taken the question of contributory negligence from the jury would have been manifest error.  From what is said above, it will also appear that the defendant's fifth point, asking the court to direct a verdict against the plaintiff, was likewise properly refused.

In the language quoted from the charge in the sixth assignment of error, the learned judge of the court below indicated a higher measure of duty on the part of the defendant, regarding the character of pilots, fenders and like devices to be used on its cars, than is required in Pennsylvania.  The general rule, equally applicable to spark arresters, pilots, fenders and other devices intended to promote the safety of persons and property, whether used on steam or street railways, is briefly stated in Henderson v. Railway Company, 144 Pa. 461, as follows : " It is the duty of railway companies to adopt the best precautions against danger in general use and which experience has shown to be superior and effectual, and to avail themselves of every such known safeguard or generally approved invention, to lessen the danger."  In 3 Wood on Railroads, 1578, the author says :  " This rule does not require the company to use any appliances which have not been tested, although approved by the highest scientific authorities, but requires only the use of those which have been tested and put into general use."  In the case in hand the jury were told " or if without any special use or general use, their common sense would teach them that there was a better appliance they ought to adopt it, because people are expected to use ordinary sense, good prudence, care and caution.  If they fail to adopt anything that a public use has indicated as being proper, or which their own common sense, if applied, would teach them was proper and reasonably necessary, then their failure to adopt that is negligence."  The effect of this instruction was to abolish the rule above mentioned and put in its place an indefinite and uncertain standard.  There might be in the minds of the jury a dozen different ideas of what constitutes common sense, as applicable to the subject-matter, and each juror would likely feel like insisting that his common sense was the common sense that should have been possessed and acted upon by the company.

That part of the charge of the court, set forth in the seventh

assignment of error, is characterized by the same mistaken view of the law,—the court submitting to the jury the question, whether it was not negligence on the part of the defendant not to adopt proposed inventions, not then in general use and indeed only existing in the experimental stage.

We are satisfied, too, that the city ordinance, referred to in the eighth and last assignment of error was improperly admitted in evidence. It requires that all passenger railway companies shall be provided with "the most improved, modern pilot or safety guard." This, as has already been explained is an attempt to establish a higher measure of duty than the law fixes.

As between the plaintiff and the defendant company the ordinance cannot be invoked to create a higher standard of care than is fixed by the law of the land. Ordinances regulating the speed of trains and street railway cars stand on a different footing, for the reason that the law fixes no rate of speed, and therefore unless clearly unreasonable, have been admitted in evidence where the negligence charged was too rapid running. In this case however the ordinance was entirely irrelevant. If there were an issue as to the sufficiency of the fender in use on the car, the ordinance could throw no light on that question. There was no dispute as to the fact that there was a fender on the car, nor could there be any as to the duty of the defendant to have one there. Whatever may have been the purpose of admitting the ordinance in evidence, its only effect, if it had any, was to prejudice the defendant's case with the jury, by suggesting to them a different and greater measure of duty in regard to the selection and use of fenders than the law establishes. We deem it proper also to say here that there was no evidence tending to meet and overthrow that offered by the defendant to show that the plank fender or guard employed on the car that killed the child was the best in general use at that time. The fact that the defendant company, and perhaps others, were then and had been for a short time before experimenting with what is called the "Crawford guard," which later, through compulsion of the city authorities, was adopted, did not disprove the uncontradicted testimony of John S. Irwin, the defendant's witness, on this point.

The sixth, seventh and eighth assignments of error are sustained.

The judgment is reversed and a venire facias de novo awarded.