LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* W. A.
FORT.

*(Nashville.    December Term, 1903.)*

1.  **BILL OF EXCEPTIONS.**    Must be made and filed during term,
    when.

    To preserve exceptions to the action of the trial court in relation
    to any matters not a part of the record, which a bill of excep-
    tions is necessary to bring into the record, a bill of exceptions
    embodying such matter must be tendered, authenticated by
    the signature of the presiding judge, and filed in the case dur-
    ing the term of court at which the action complained of oc-
    curred.    (*Post, pp.* 439-440.)

    Cases cited and approved:    McGavock v. Puryear, 6 Cold., 34;
    Garrett v. Rogers, 1 Heis., 321; Steele v. Davis, 5 Heis., 75;
    Jones v. Burch, 3 Lea, 747; Darden v. Williams, 100 Tenn., 414;
    Nance v. Chesney, 101 Tenn., 466.

2.  **SAME.**  Same.  To make petition and bond for removal to the
    federal court a part of the record.

    The petition and bond for the removal of a cause from the State
    to the federal court are not part of the record in the cause,
    unless filed and made a part of the record by a bill of excep-
    tions during the term of court at which they were presented;
    and their incorporation in the bill of exceptions made on the
    final trial at a subsequent term is not effective to make them a
    part of the record.    (*Post, pp.* 438-440.)

3.  **SAME.**  Same.  Same.  Statute extending time beyond term
    is not applicable to wayside bills of exceptions, when.

    The statute (Acts 1899, ch. 275) authorizing the trial judge to
    allow time in which to file bills of exceptions after final judg-
    ment does not apply to wayside bills of exceptions of the char-

acter required to make the petition and bond for the removal of a cause from the State to the federal court a part of the record. (*Post, pp.* 439-440.)

Acts cited and construed: 1899, ch. 275.

4. **EVIDENCE.** That fires were originated by sparks from locomotives before and after fire sued for is competent, when.

In an action against a railroad company for damages for the destruction of plaintiff's property by fire alleged to have been negligently communicated from an unknown locomotive of the defendant, testimony offered by the plaintiff tending to show that the locomotives operated by defendant upon the line of the road near plaintiff's burned property within a few weeks before and after the fire destroying same threw sparks and burning cinders from their smokestacks, which set out and originated fires as far from its track as the place where plaintiff's burned property stood, is competent. (*Post, pp.* 440-450.)

Cases cited and approved: Burke v. Railroad, 7 Heis., 456, 464; Railroad v. Short, 2 Cates, 713, 717; Railroad v. Tyne, 7 Am. & Eng. Ry. Cas., 515; Railroad v. Richardson, 91 U. S., 454; Sheldon v. Railroad, 14 N. Y., 218; Diamond v. Railroad, 6 Mont., 580; Railroad v. McClelland, 42 Ill., 355; Crist v. Railroad, 58 N. Y., 638; Henderson v. Railroad, 144 Pa., 461.

5. **SAME.** Same. Such is competent in chief to show habitual negligence and probability of fire.

Such testimony as that stated in the foregoing headnote is relevant and competent evidence in chief to show habitual negligence upon the part of the defendant railroad company in the equipment, repair, and management of its locomotives, and that they would and did discharge sparks and cinders, which, under similar conditions, would originate fires so far from its track as the property destroyed was situated, and the consequent possibility and probability that the fire complained of was communicated in this manner. (*Post, pp.* 443-444, 446.)

See citations under the fourth headnote.

112 Tenn—28

Railroad v. Fort.

6. **SAME. Same. Such is competent in rebuttal to contradict evidence of defendant.**

Such testimony is also competent in rebuttal, as tending to contradict the evidence offered by defendant that its locomotives were properly constructed, equipped, in good repair, and carefully handled. (*Post, p.* 444.)

7. **SAME. Same. And is not rendered incompetent by defendant's evidence identifying locomotives, and showing them properly equipped.**

The testimony stated in the fourth, fifth, and sixth headnotes is not rendered incompetent by the fact that defendant had filed depositions to the effect that only four locomotives had passed from which fire could have escaped, identifying them, and that they were properly equipped with spark arresters and appliances, and carefully handled, especially where plaintiff proves that a fifth train passed after the identified trains and about fifteen minutes before the fire whose locomotive discharged great volumes of smoke which covered and enveloped the burned property. (*Post, pp.* 441-442.)

See citations under fourth headnote.

8. **CARE. Commensurate with the risk or hazard must be exercised by railroads.**

Where there is a severe drouth and the wind is blowing strongly from the direction of the railroad towards nearby property, and the running of trains is attended with unusual danger from sparks, the law requires of the railroad company ordinary care which care is commensurate with the risk or hazard. (*Post, pp.* 450-454.)

9. **SAME. Same. A question for jury under facts of each case.**

What would be or what would not be ordinary care is always a question for the jury, and must depend upon the facts and circumstances of each case. (*Post, p.* 450.)

Railroad v. Fort.

**10. SAME. Same. Burden of proof is on railroad when fire originates from its sparks.**

Where it is shown that fire was communicated from the locomotive of a railroad company to the property destroyed, the burden of proof is upon the company to show that it has performed and discharged all of its duties in the equipment and management of its locomotives. (*Post, p.* 454.)

Case cited and approved: Simpson v. Railroad, 5 Lea, 457.

**11. INTEREST. May be allowed by jury upon value of property destroyed.**

In actions for the destruction of property, juries when finding for plaintiff may in their discretion allow interest upon the amount found by them as value of the property destroyed from the date of its destruction; for the jury in such a case has the equitable power to give interest in the way of damages, if they think justice requires it. (*Post, pp.* 438, 454-459.)

Code cited and construed: Secs. 3492, 3494 (S.); secs. 2700, 2702 (M. & V.); secs. 1943, 1945 (T. & S. and 1858).

Cases cited and approved: Cole v. Sands, 1 Tenn., 106; Cherry v. Mann, Cooke, 268; Davidson County v. Olwill, 4 Lea, 34; Railroad v. Wallace, 91 Tenn., 35.

**12. SAME. Same. May be calculated and included in judgment upon verdict when properly allowed by jury.**

Where the jury returns a verdict in favor of plaintiff for a certain sum as the value of property destroyed, with interest from the date of the destruction which date is shown by the pleadings and proof, it is proper for the trial judge to allow, calculate, and include legal interest in the judgment upon the verdict. (*Post, pp.* 438, 459-462.)

Cases cited and approved: Knights of Pythias v. Allen, 104 Tenn., 628; Hattenback v. Hoskins, 12 Iowa, 109; Gibson v. Lewis, 27 Mo., 532; Barrett v. Wills, 4 Leigh, 114; Gaff v. Hutchinson, 38 Ind., 341; Buchanon v. Townsend, 80 Tex., 534; Griffin v. Chadwick, 44 Tex., 406; Paige v. Cody, 1 Cow., 115.

FROM ROBERTSON.

Appeal from the Circuit Court of Robertson County.
—B. D. BELL, Judge.

JOHN BELL KEEBLE, LOUIS T. COBB, JNO. W. JUDD,
and A. E. GARNER, for Railroad.

H. C. TRUE, JOEL B. FORT, JAS. A. PILCHER, and K. T.
MCCONNICO, for Fort.

MR. JUSTICE SHIELDS delivered the opinion of the
Court.

W. A. Fort's tobacco factory and contents, situated
near the track of the Louisville & Nashville Railroad
Company in the town of Saddlersville, Robertson
county, Tennessee, were destroyed between the hours of
ten and twelve o'clock of the morning of June 18, 1901,
by fire claimed by him to have been negligently com-
municated from an unknown locomotive of the plaintiff
in error passing along its railroad near the property,
and this action was brought in the circuit court of that
county to recover the damages resulting from its de-
struction.

The negligence averred in the declaration consists of

the improper handling of a locomotive of the plaintiff
in error of unknown identity while passing the factory,
failure to have it equipped with appliances to prevent
the escape and discharge of sparks and cinders of the
latest and most approved character, and allowing those
used to become and remain worn and defective, whereby
and through which live sparks, cinders, and coals es-
caped and were discharged from it upon the property of
the defendant in error, setting fire to and destroying it.

The plaintiff in error and W. A. Fort were both citi-
zens of the State of Kentucky when the suit was
brought. W. A. Fort died in May, 1902, and R. E. Fort,
a citizen of Tennessee, was appointed administrator of
his estate by the county court of Robertson county, and
at the June term of the circuit court the death of the
former was suggested and admitted and the case revived
in the name of the latter as administrator. Plaintiff in
error then presented to the court a petition, with proper
bond for costs, for the removal of the case to the circuit
court of the United States for the district, averring in
the petition the facts above stated, the diverse citizen-
ship of the parties, and that the case was then for the
first time removable, and moved the court for permission
to file the petition and bond, and for an order of re-
moval, which motion upon consideration was overruled,
and the order denied, the presiding judge being of the
opinion that a case for removal was not disclosed in the
petition. An entry was made upon the minutes show-
ing that the petition and bond were presented, a motion

for permission to file them made and denied, but no bill of exceptions was tendered or filed making the petition and bond a part of the record. A continuance was then allowed.

The case was tried at the October term, 1903, by the court and a jury, resulting in a verdict in favor of defendant in error for $10,000, the value of the property destroyed with interest from June 18, 1901, the date of the fire, upon which the court, after overruling the motion of plaintiff in error for a new trial, and computing the interest to be $1,384.99, entered a judgment for $11,384.99 and costs, to reverse which the plaintiff in error, having tendered and filed its bill of exceptions, prosecutes an appeal in the nature of a writ of error to this court.

The first error assigned is predicated upon the action of the trial judge in refusing to allow the plaintiff in error to file its petition and bond and order a removal of the case to the circuit court of the United States.

The petition and bond which plaintiff in error asked permission to file were not filed or made a part of the record by bill of exceptions at the term of court at which they were presented, and are therefore no part of the record in this case. They were incorporated in the bill of exceptions filed upon the final trial at the October term, 1903, and are copied in the transcript, but this is not effective to bring them into the record and authorize this court to consider them and review the action of the trial judge in the matter. They should have been em-

Railroad v. Fort.

·bodied in a bill of exceptions properly taken at the June term of the court, when they were presented, and permission to file them refused, if it was desired to insist upon the exceptions taken to the action of the trial judge in refusing the application. It is well-settled practice that when it is desired to preserve exceptions to the action of a trial court in relation to any matter not a part of the record, and which a bill of exceptions is necessary to bring into it, a bill of exceptions embodying such matter must be tendered, authenticated by the signature of the presiding judge, and filed in the case before the adjournment of the term of court at which the action complained of occurred.

This rule applies to proceedings had in the progress of the case, as well as to the action of the court upon trial and judgment. If the action of the court is had at a term previous to that at which the final judgment is entered, the bill of exceptions must ·be made and filed at such previous term, and, if not then done, the exceptions are waived. The statute enacted in 1899 (Laws 1899, p. 657, c. 275), authorizing the trial judge to allow time in which to file bills of exceptions after final judgment, does not apply to wayside bills of exceptions of this character. The object of the rule is to secure an accurate record of the facts upon which the exceptions are predicated, which can only be done by requiring the bill of exceptions to be made and authenticated while they are yet fresh and clear in the minds of the presiding judge and the parties to the case. Long experience

has proven that this is a most salutary rule, to which courts should strictly adhere. Any other practice would result in uncertainty and confusion.

All our cases upon this subject are in accord. *Mc-Gavock* v. *Puryear,* 6 Cold., 34; *Garrett* v. *Rogers,* 1 Heisk., 321; *Steele* v. *Davis,* 5 Heisk., 75; *Jones* v. *Burch,* 3 Lea, 747; *Darden* v. *Williams,* 100 Tenn., 414, 45 S. W., 669; *Nance* v. *Chesney,* 101 Tenn., 466, 47 S. W., 690.

The petition and bond for removal presented, therefore, are not before us, and the action of the trial judge in refusing to allow them to be filed and order a removal of the case cannot be here reviewed upon its merits, and the assignment of error thereon is overruled.

The second assignment of error is based upon the action of the trial judge in overruling the objections made by the plaintiff in error to the testimony offered by the defendant in error tending to show that the locomotives operated by it upon that line of its road, in passing Saddlersville and vicinity within a few weeks before and after the factory was destroyed threw sparks and burning cinders from their smokestacks, which set out and originated fires as far from its track as the place where the factory stood.

The tobacco factory destroyed was situated about 100 feet from the railroad track, and covered by a very old and dry shingle roof. A severe drought was prevailing in that section of the country, and the wind that morning was blowing strongly from the direction of the rail-

road toward the factory. The fire was first discovered upon the outside of the roof of the factory, on the side next the railroad about 11 o'clock a. m.

The proof concerning the number of trains that passed Saddlersville that morning was conflicting. The plaintiff in error undertook to prove that only four passed between the hours of 8 o'clock and 10:30 o'clock, and to identify the locomotives pulling these, and prove that they were properly equipped with spark arresters and appliances, and carefully handled; while the defendant in error claimed that a fifth train, a long heavy freight, passed about 15 minutes before the fire was discovered, running rapidly, and that the locomotive discharged great volumes of smoke, which covered and enveloped· the factory; but no one saw any live sparks or cinders fall upon its roof. There was no other known source from which the fire could have been communicated.

There was also proof tending to show that all the locomotives of plaintiff in error upon this road were of similar construction and equipment, and that a locomotive equipped with a spark arrester of the latest and most approved kind, in good repair, when properly operated, would not throw sparks and cinders more than 20 feet from the track.

The evidence upon which plaintiff in error undertook to identify and prove the equipment, condition, and manner in which the four locomotives which it claimed had passed Saddlersville the morning of the fire was in the form of depositions of a number of its employees, taken

in its behalf, and filed in the case several months before the trial, and subject to the examination of the defendant in error.

The contention of plaintiff in error in support of this assignment is that evidence that other locomotives operated by it upon the same road where the fire occurred, and about the same time, threw out and discharged cinders which would probably have caused the destruction of the property in question, is only competent when the locomotive supposed to have communicated the fire is unknown and unidentified, and its equipment and state of repair cannot be proven; while in this case, from the evidence placed on file by it long before the trial, the only locomotives from which the fire could have escaped, four in number, are fully identified, and their equipment and condition open to investigation and proof.

If the rule was that evidence of the character offered and admitted was not competent when the locomotive claimed to have set out the fire was known and identified it would not be applicable to this case.

The identification of the locomotives which plaintiff in error claims are the only ones from which the fire could possibly have been communicated is altogether insufficient.

Proof that one or more or four locomotives, if any, set out the fire, is too uncertain, and does not amount to identification. Nor can plaintiff whose property has been destroyed in this manner be restricted by railroad

Railroad v. Fort.

companies in the production of evidence of their negligence as here attempted.

To confine the proof of negligence in these particulars to the equipment and condition of locomotives identified by railroad companies in this or any other way would be to give them absolute control of all proof of their character, and an unfair advantage in all cases where the plaintiff could not produce positive evidence of the origin of the fire.

Plaintiffs in these cases would be unable to controvert the evidence produced by the defendants. They have no access to the records and information necessary to establish the identity of the locomotives drawing the numerous trains of a great railroad system, and ordinarily, where identity is established, they have not the skill to determine whether the locomotive is properly equipped or in good repair, and how are they to know that it is then in the same condition as when the fire occurred.

The evidence filed would always be against them, for it is not to be presumed that railroad companies will place in the record testimony which would establish their liability for the damages claimed.

This rule is also inapplicable to this case because there was evidence that a fifth train passed the factory near the hour of the fire, the locomotive of which was wholly unidentified.

But the contention of plaintiff in error is untenable, and not the law. The testimony admitted was relevant and competent evidence in chief to show habitual negli-

gence upon the part of the company in the equipment, repair, and management of its locomotives, and that they would and did discharge sparks and cinders, which, under similar conditions, would originate fires so far from its track as the property destroyed was situated, and the consequent possibility and probability that the fire complained of was communicated in this manner. This was peculiarly so in this case, as no one saw the sparks fall upon the buildings, and the origin of the fire was otherwise unknown and unaccounted for, and also because all the engines used upon that line were of similar construction and equipment. It was also competent in rebuttal, as tending to contradict the evidence offered by plaintiff in error that its locomotives were properly constructed, equipped, in good repair, and carefully handled.

While there are authorities that hold that, where the locomotive from which the fire originated is satisfactorily identified, testimony of other fires being set out must be confined to that particular locomotive, they have never been followed by this court.

In the case of Burke v. Louisville & Nashville Railroad Company, 7 Heisk., 456, 19 Am. Rep., 618, the admission of evidence similar to that admitted in this case was held to be proper.

It is there said:

"Over the objections of the defendant, it was also shown that on previous occasions other engines of the defendant had been seen to emit sparks, which were

borne much further on a light wind than the distance
between the road and the plaintiff's house—sometimes
fifty yards, at others the length of a train of twenty cars;
and that fences and grass along the way had now and
then been ignited by the falling sparks. . . .

"Upon the question of evidence presented, it was held
in England that it was proper evidence to go to the jury
that the company's engine had before, in passing along
the line, emitted sparks a sufficient distance to have
done the injury in that case, as a means of ascertaining
the possibility of the building being fired in the manner
alleged. The testimony in that case showed that the
danger of emitting sparks is very much increased by
overtasking the engine, and that it may be altogether
avoided by shutting off the steam in passing a place
where there is danger from sparks, or that the danger
may be guarded against by mechanical precaution."

This court also held evidence of this character compe-
tent in the case of *Nashville & Chattanooga Railway
Company* v. *Tyne,* 7 Am. & Eng. Ry. Cas., 515, saying:

"It is further objected that the court erred in allowing
a witness to state that two weeks after the fire he saw
sparks fall from defendant's engine, in passing on the
trestle, upon the spot where the house was burned, in
such volume as would have fired the house if it had been
standing. The house was situated about twenty or
thirty feet from the track upon the trestle, and its roof
was below the rails, and the charge of plaintiff below
was that it was burned by sparks from a passing train,

and that due caution was not observed by the company's servants, nor were their machinery and smokestack or spark arresters up to the standard required by law. A number of witnesses testified as to the distance live sparks would be cast, varying their estimate from fifteen to thirty feet."

"We think their evidence was legitimate for either side; and, if so, it is manifest that an immediate observation of the fact was more satisfactory than opinions. Similar evidence was held admissible in the case of *Burke* v. *Railroad Co.*, 7 Heisk., 464, 19 Am. Rep., 618. Some witnesses of the defendant below, who had testified that an engine would not throw live sparks more than fifteen feet were asked on cross-examination whether they would not consider an engine or spark arrester 'out of order' if it threw live sparks thirty or thirty-five feet, and they answered that they would. This, we think, was competent evidence."

It does not appear from the opinions of the court in these cases that the particular locomotive from which the fire originated was identified, and in the last case that there was evidence that all the locomotives of the railroad company operated upon that line were constructed and equipped alike, but the testimony was admitted regardless of these facts to show that the company was guilty of habitual negligence in this respect, and the possibility and probability that the buildings were destroyed by sparks and cinders discharged by its locomotives.

In the case of *Louisville & Nashville Railroad Company* v. *Short,* 110 Tenn., 713, 77 S. W. 936, proof that the locomotives of plaintiff in error generally threw out sparks and cinders, which created fires along its road within ten months of the fire in question, was held competent, it appearing that all the locomotives operated on the road during that time were equipped with similar spark arresters, as tending to show negligence in that the locomotives were of improper construction or improperly operated; while similar proof relating to a period previous to that time, when the locomotives were of a different construction, was rejected as too remote and uncertain to throw any light upon the conduct of the company at the time of the fire which was the subject of the inquiry.

In the case of *Grand Trunk Railway Company* v. *Richardson,* 91 U. S., 454, 23 L. Ed., 356, Mr. Justice Strong, in overruling an assignment of error based upon the action of the trial judge in admitting evidence that at various times during the same summer before the fire occurred locomotives of the defendant railway company, other than the two which were proven to have passed shortly before the fire which destroyed plaintiff's property was discovered, one or the other of which the plaintiff claimed had communicated the fire, discharged live sparks and cinders the distance plaintiff's mill was situated from the road, without showing that the locomotives were similar in their construction, repair, and operation, said:

"The question, therefore, is whether it tended in any degree to show that the burning of the bridge, and the consequent destruction of the plaintiffs' property, were caused by any of the defendant's locomotives. The question has often been considered by the courts in this country and in England, and such evidence has, we think been generally held admissible as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. There are, it is true, some cases that seem to assert the opposite rule. It is, of course indirect evidence if it be evidence at all. In this case it was proven that engines run by the defendant had crossed the bridge not long before it took fire. The particular engines were not identified, but their crossing raised at least some probability, in the absence of proof of any other known cause, that they caused the fire. And it seems to us that, under the circumstances, this probability was strengthened by the fact that some engines of the same defendant, at other times during the same season, had scattered fire during their passage."

In the case of *Sheldon* v. *Hudson River Railroad Company,* 14 N. Y., 218, 67 Am. Dec., 155, it is held that evidence that at other times sparks and fire had been thrown from locomotives to a greater distance from the track than the buildings destroyed, which were liable to set fire to objects, was admissible.

In *Diamond* v. *Northern Pacific Railroad Company,* 6 Mont., 580, 13 Pac., 367, evidence of emission of sparks by the defendant's engines prior and subsequent to the

Railroad v. Fort.

time of the fire in question was held competent without showing that they were under the charge of the same engineer or of the same construction as the engine causing the fire.

In the case of *Illinois Central Railroad Company* v. *McClelland,* 42 Ill., 355, the company had offered evidence tending to show that defendant's engines were provided with spark arresters of the most approved character, and the plaintiff was allowed to show in rebuttal that some of its engines had, about the same time as the fire complained of, thrown sparks 100 feet from the track.

In *Crist* v. *Erie Railroad Company,* 58 N. Y., 638, an action to recover for buildings destroyed by coals from a locomotive engine, after testimony had been given tending to exclude the probability that the fire originated from any other source, evidence that engines passing on other occasions discharged sparks and coals, which fell farther from the track than the building destroyed, was held competent.

In *Henderson* v. *Philadelphia & R. R. Company,* 144 Pa., 461, 22 Atl., 851, 16 L. R. A., 299, 27 Am. St. Rep., 652, it was held that, where the particular engine from which the fire was communicated was not satisfactorily identified, it was competent for the plaintiff to prove in support of the allegation that the fire was the result of the defendant's negligence that defendant's locomotives generally, or many of them, at about the time of the fire

112 Tenn—29

complained of, threw sparks, which caused other fires along that part of the defendant's road, destroying property situated similarly to that of the plaintiff.

It is thus clear from our own cases and those of other courts of high authority that there was no error in the action of the trial judge in admitting this evidence.

Another assignment of error is based upon the charge of the court in relation to the degree of care the plaintiff in error should have exercised under the facts disclosed in the record to prevent the destruction of the property of defendant in error by fire escaping from its locomotives.

The instruction complained of is in these words:

"The court has heretofore charged you that if you find there was a drought and wind on the day of the fire, and that the running of trains was attended with unusual danger from sparks, the law required of the railroad company unusual care and precaution." What the court meant by the above was that the railroad company must at all times use ordinary care in the management of its engines to prevent them throwing out sparks, and that ordinary care on the part of the railroad company is care commensurate with the risk or hazard, and what would be or what would not be ordinary care is always a question for the jury.

This is merely the application of the elementary doctrine that it is the duty of every one in his conduct and the use of his property to exercise ordinary or reasonable care and prudence so as not to injure others, the degree

of care required to be commensurate with the character
of the business carried on, the danger to which it exposes
the property of others, and the then existing conditions,
to railroad companies in the operation of their locomo-
tives.    They are authorized to use and carry fire on them
for the purpose of generating steam, and when they have
them properly constructed and equipped with spark ar-
resters and appliances of the latest and most approved
character to prevent the escape of coals and cinders, in
good repair, and carefully and skillfully handled, and
observe such other precautions as the surroundings may
call for to avoid the communication and spread of fire,
they are not liable for property unavoidably destroyed
by escaping sparks and cinders; but on account
of the great stretches of country and number of
towns over and through which their trains
are constantly passing at all hours of the day and night
and seasons of the year, and the vast amount of valuable
property along their roads, much of which has been con-
structed there for the purpose of doing business with
them, upon their implied invitation, and the fearfully
destructive power of this element when once beyond con-
trol, they should be required to exercise at all times a de-
gree of care and prudence commensurate with the dan-
ger to which this property is exposed by them in the law-
ful conduct of their business.    And, as the danger nec-
essarily attending the use of fire in locomotives is far
greater in some places and upon some occasions than
others, what is reasonable care in their equipment and

management must always depend upon the facts and circumstances of each case. What would be ordinary care in the operation of them in the country, or in a wet season, might be gross negligence in a town or city, or in a drought, where and when the danger of communicating the fire is, in the very nature of things, much greater.

The rule is clearly, comprehensively, and correctly stated in Mr. Elliott's valuable work on the Law of Railroads in these words:

"It is a well-settled principle of law that care in doing any particular act must be exercised in proportion to the danger attending the act. Where the doing of any particular act is attended with unusual hazards, unusual care must be exercised, but where the performance of the act is attended with only ordinary hazards a less degree of care is required. These principles have frequently been applied in railway fire cases, for the circumstances under which fires are likely to occur and do occur are so varied that different degrees of care must necessarily be employed. In proportion as the hazards increase, there should be a corresponding increase in the care exercised. Thus it has been held that it is the duty of a railway company in an unusually dry season, where all inflammable material is like tinder, and liable to be set on fire from the smallest spark, to exercise greater precaution and care than in wet or damp seasons So, where the wind is blowing directly from an engine

Railroad v. Fort.

toward wooden buildings or combustible materials, greater precaution may be required," etc.

It is also concisely stated in Judge Thompson's Commentaries on the Law of Negligence, vol. 2, section 2233, as follows:

"The degree of care which it is required to exercise in all these cases is, as in other cases proportionate to the danger accruing to third persons from a failure to exercise care. In other words, here, as in other cases, what the law regards as reasonable care is a care proportioned to the risks; and it may, in some cases, require a high degree of skill, and the most exact and unremitting care and attention and diligence, while in other cases, where the danger is remote, it will be satisfied with a less skill and with a less exact and constant care and attention."

It is the duty of railroad companies not only to have their engines properly constructed and equipped with appliances for the prevention of the escape of fire according to the latest and most approved state of the art, and to keep the same in repair, but when so equipped to have them carefully and prudently handled.

Negligence of a railroad company whereby fire is communicated to adjacent premises, says Judge Thompson, may consist: "(1) In not being provided with the best appliances to prevent the unnecessary escape of fire from its locomotives; (2) in not keeping such appliances in repair; (3) in not keeping its right of way free from combustible materials; (4) in operating its locomotives so as to unnecessarily scatter fire; (5) in not arresting

the spread of fire after it has been set by its engines from its negligence upon its right of way."

And where it appears that the fire was communicated from the locomotive of a railroad company to the property destroyed, the burden of proof is upon the company to show that it has performed and discharged all of its duties as herein defined, because the owners of the property along the roads have no opportunity to examine the locomotives of the company, and generally are unable to determine whether or not they are properly equipped, or in good repair; and in most cases the particular engine which communicated the fire is unknown, while it is the duty of the railroad companies to know the character and condition of their engines, and the manner in which they are operated. *Simpson* v. *R. Co.*, 5 Lea, 457.

The charge if his honor upon this subject was correct, and the assignment of error theron is overruled.

The other errors assigned challenge the right of the defendant in error to recover interest upon the value of the property destroyed, especially upon the verdict returned by the jury in this case. They are as follows:

"It was error in the trial judge to charge the jury that they could allow or disallow interest on the amount of the recovery from the time of the destruction of the property, in their discretion. It was error for the trial judge to give the jury in charge the plaintiff's eighth request, which was that it was in the discretion of the jury to allow or disallow interest upon the amount which they find in favor of the plaintiff, if they find anything: . .

that the jury have the equitable power to give interest in the way of damages in a case like this, if they think justice demands it."

"The court erred in counting the interest on $10,000 from June 18, 1901, and in rendering a judgment on the verdict of the jury for $11,384.99.   The court could only render judgment on the verdict of the jury for $10,000. That part of the verdict of the jury which says, 'with interest from June 18, 1901,' without stating what the interest was, is illegal, and it was error for the trial judge to include the interest, and give judgment for the amount of such interest."

We will first dispose of the questions made upon the charge.

The statutes of Tennessee upon the allowance of interest are as follows:

"Interest is the compensation which may be demanded by the lender from the borrower, or by the creditor from the debtor, for the use of money."

"All bills single, bonds, notes, bills of exchange and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned."   Shannon's Code sections 3492, 3494.

The last section is imperative, and interest must be allowed in the cases provided for in it.   All others are left as they were at common law, under which the jury have an equitable power, and may, in the form of damages,

allow interest, if they think justice requires that it be done.

This was decided in the case of *Davidson County* v. *Olwill,* 4 Lea, 34, where it is held:

"Interest for money as a legal consequence was unknown to the common law. *Cherry's Ex'rs* v. *Mann,* Cooke, 268, 5 Am. Dec., 696. It has, however, been given by statute on judgments, and on a large class of assignable and negotiable instruments, and upon liquidated accounts signed by the parties. Code, sections 1942, 1945. It is defined by the statute to be the compensation which may be demanded by the lender from the borrower, or by the creditor from the debtor, for the use of money. Code, section 1943. In all cases which are left as at common law, the jury has an equitable power, and may, in the form of damages, give interest, if they think justice demands it. *Cole* v. *Sands,* 1 Tenn., 106. Under our statute and decisions interest has become an incident of debt after maturity, because either given by positive law, or, in the absence of countervailing equity, by the inevitable verdict of the jury, or by the court acting in the place of the jury."

While we have no case in which this precise question has been before this court, it was incidentally considered in that of *Railroad Company* v. *Wallace,* 91 Tenn., 35, 17 S. W., 882, an action for personal injuries sustained, where interest was allowed by the jury under the charge of the trial judge; the court saying:

"The error of the court below was in the assumption

that a like measure of damages is applied in this class
of cases as in that of injury to property affecting its de-
struction or conversion, or other unlawful or fraudulent
misappropriation, or detention of property or money, in
which the rule applied by the circuit judge is held to be
a proper one, not on the theory, even in this class of
cases, that interest, as such, is due, but that the plaintiff
is entitled to the fixed sum of money, or a definite money
value of property converted or destroyed, and the jury
may give as damages an amount equal to interest on the
value of the property. But such rule applies alone to
such cases, and not to that of personal injury, which
does not cease when inflicted, and is not susceptible of
definite and accurate computation. . . ."

This is a correct statement of the rule in cases of this
character. Any other would work injustice.

The owner of the property is, without any fault upon
his part, deprived of its value, possession, and use
through the wrongful act of the railroad company. Com-
pensation for the wrong done is the measure of the dam-
age to which he is entitled, and nothing less than the
market value of the property at the time of its destruc-
tion, with legal interest until paid, will make him
whole. And this, in many cases, will fall short of full
compensation for the loss sustained, but it is the nearest
certain rule that can be applied. There is no difficulty
in arriving at the amount due under it, since the fair
market value of the property at the time of its destruc-
tion, with interest to the time of payment or judgment,

can always be ascertained and computed with reasonable certainty.

We find in the American and English Ency. of Law, vol. 16 (2. Ed.), p. 1027, a statement of the rule which seems to be supported by the adjudged cases in a majority of the states, in these words:

"As the damages recoverable in actions for torts are necessarily unliquidated, and often wholly uncertain, the early rule was that interest on such damages was not recoverable.

"The common-law objection to the recovery of interest in cases of tort for unliquidated damages seems to have been first modified in actions of trover and conversion, where the value of the property was sought as having been converted into money.

"At the present time the rule of most jurisdictions is that in cases of trover or trepass, or in action for injuries to or destruction or loss of property, negligent or otherwise, interest is recoverable on the damages assessed.

"This rule is obviously just, and goes to the foundation of the principle upon which a recovery is allowed for civil injuries, viz., compensation to the injured party and, though interest on the value of the property is not always an adequate compensation, the law allows it as approximating compensation, and with a view of fixing some certain and uniform measure of recovery.

"When interest is given upon such theory, it is, in general, awarded as of the time when the injury was sus-

tained and the loss suffered. Where one party is deprived of the use of property for a time by the wrong of another, the former will be entitled to interest on the value of the use of the property during such period."

We are of the opinion that the law is here correctly stated, and that in actions for the destruction of personal property, juries, when finding for plaintiffs, may, in their discretion, allow them interest upon the value of the property destroyed from the date of its destruction, and that the instruction to this effect given the jury in this case was correct.

It is insisted under the other assignment of error that the trial judge erred in computing and allowing interest upon the verdict as returned by the jury.

The bill of exception states that "the jury retired to their room to consider of their verdict, and afterwards returned into open court, and announced that they had agreed, and found in favor of plaintiff, and assessed his damages at $10,000, with interest from the date of the fire;" and the judgment entered upon the minutes contains the recital that the jurors "upon their oaths do say that they find the matters in controversy in favor of plaintiff, and assess his damages at $10,000, the value of the property destroyed, and interest on said sum from June 18, 1901, which interest the court finds to be $1,-384.95," which is included in the judgment.

There is no material difference in these statements of the verdict, and both are sufficiently certain. The date of the fire was alleged in the declaration and admitted

in a plea filed by the plaintiff in error to have occurred on June 18, 1901, and there was no conflict in the proof upon this subject. The jury, in their verdict, found the value of the property, and allowed interest thereon from a certain date, and the law fixed the rate. All that was necessary to ascertain the aggregate damages assessed for the plaintiff was a calculation of interest to the time of the trial. It was a verdict for dollars and cents, definite and certain in its terms, according to the maxim that that is certain which can be made certain. We cannot see any sound or tenable objection that can be made to it. The value of the property being found, and interest allowed from a given date, with the rate fixed by law, there was nothing to do but to make a mathematical calculation, a clerical act unmixed with discretion, which the presiding judge, or the clerk under his direction, could do. It has been held by this court that, where the action is upon an instrument which the statute says shall bear interest, it follows as a matter of law, and when the jury fail to allow it in the verdict returned, it may be computed by the judge, or he may direct the clerk to do so, and include it in the judgment. *Knights of Pythias* v. *Allen,* 104 Tenn., 628, 58 S. W., 241.

There is no difference in a case where interest is allowed by law from a date contained in a written instrument and one where it is allowed by a jury, under the instructions of the court, from a date stated in the verdict. The certainty requisite in verdicts is that nothing be left for the exercise of the discretion of the trial judge

or, in other words, that nothing be left to be determined in order to ascertain the amount for which the judgment shall be rendered.

Tried by this test, the verdict returned in this case is certain and valid.  Computation of interest is not a judicial act, and a verdict which requires such computation to ascertain the sum for which the judgment is to be entered is not uncertain.  In this conclusion we are supported by the decisions of other courts of last resort.

In that of *Hattenback* v. *Hoskins,* 12 Iowa, 109, the verdict of the jury was for a certain sum, with interest from the date of a certain writ of attachment named in the pleadings, and in the service of which it was claimed that the defendant, as sheriff, committed the trespass of which the plaintiff complained.   It was held that there was but one attachment referred to in the issues made by the pleadings, the date of which was not controverted, and that the court might with propriety render judgment upon such verdict.

In the case of *Gibson* v. *Lewis,* 27 Mo., 532, it was held that, although a verdict is informal which omits to state the result, if it can be ascertained and rendered certain by a simple operation in arithmetic, it is amply sufficient upon which to render a judgment.

In the case of *Barrett* v. *Wills,* 4 Leigh, 114, 26 Am. Dec., 315, it was held that a verdict for the debt claimed in the declaration with interest from a certain time, and subject to a credit for a specified sum, was sufficiently certain.

And in *Gaff* v. *Hutchinson,* 38 Ind., 341, the jury returned a verdict for a certain sum, with 6 per cent interest thereon from a previous date named and upon appeal from a judgment entered thereon, as only a simple computation was necessary to fix the exact amount of the verdict so that it might be expressed in one sum, the supreme court was of the opinion that it was sufficient; saying, "It is a maxim of the law that that is sufficiently certain which can be rendered certain."   Only a simple arithmetical calculation was necessary in this case, which the court could make, and render judgment accordingly.

Other cases to the same effect are *Buchanon* v. *Townsend,* 80 Tex., 534, 16 S. W., 315; *Griffin* v. *Chadwick,* 44 Tex., 406; *Paige* v. *Cody,* 1 Cow., 115.

There was no error in the action of the trial judge in computing and including interest in the judgment in favor of the defendant in error, and these assignments are also overruled.

The judgment for the defendant in error is affirmed, with costs.