NICKEY BROS. *v.* LONSDALE MFG. CO.

(*Knoxville.* September Term, 1923.)

1. **CORPORATIONS.** President not ipso facto in control of property and management.

The president of a corporation. has no power by virtue of his office alone to control the corporation's property or its management. (*Post, pp.* 400-404.)

2. **CORPORATIONS.** President held authorized to deposit bonds with bank; proceeds of sale to apply on debts to bank.

Where bonds secured by deed of trust were issued so that a corporation might borrow money for its business and other lawful purposes, and its president was authorized to dispose of them through a trust company or other agency, for best interests of corporation, and use proceeds for corporate purposes, *held*, that when he deposited them with bank, directing that they be sold, and so much of the proceeds as was necessary applied on a debt to bank, he was acting within powers vested in him. (*Post, pp.* 400-404.

Cases cited and approved: Baxter v. Washburn, 76 Tenn., 1-15; Dunscombe v. Railroad, 84 N. Y., 190.

Cases cited and distinguished: Hunt v. Memphis Gaslight Co., 95 Tenn., 144; Baxter v. Washburn, 76 Tenn., 17.

3. **CORPORATIONS.** Pledge of bonds to bank to secure debt held not to create unlawful preference.

Execution by a corporation of a deed of trust while it was still a going concern, for the purpose of securing bonds issued by it, *held* not an act of insolvency rendering a pledge of such bonds to a creditor an unlawful preference as against other creditors. (*Post, p.* 404.)

4. **CORPORATIONS.** Assets from date of assured insolvency become fixed trust fund for pro rata distribution.

The assets of an insolvent corporation become from the date of its assured insolvency a fixed trust fund for equal *pro rata* distribution among its creditors, but the act of insolvency must be positive, such as filing bill to administer assets, making general assignment, or cessation of business. (*Post, pp.* 404, 405.)

Cases cited and approved: Memphis Barrel Co. v. Ward, 99 Tenn., 177; Comfort v. McTeer, 75 Tenn., 660; Bank v. Lumber & Manufacturing Co., 91 Tenn., 12; Tradesman Publishing Co. v. Car Wheel Co., 95 Tenn., 634; Voightman v. Railroad, 123 Tenn., 452.

5. **CORPORATIONS.** Pledgee of bonds held holder in due course; "value."

Where corporation's bonds were deposited with a bank as security for a pre-existing debt, in view of Shannon's Code, section 3516a33, the bank became a holder of them in due course and for "value;" "value" being any consideration sufficient to support a simple contract. (*Post, p.* 405.)

Code cited and construed: Sec. 3516a33 (S.).

6. **CORPORATIONS.** Corporate bond is negotiable instrument.

A corporate bond secured by a deed of trust, is a negotiable instrument, and title passes by delivery. (*Post, p.* 405.)

Cases cited and approved: Nickey Bros. v. Lonsdale Mfg. Co., 257 S. W., 403; Snyder v. McEwen, 256 S. W., 434.

7. **CORPORATIONS.** Holder of note against corporation entitled to interest from date of maturity, though debtor adjudged insolvent and assets in hands of receiver.

Since Shannon's Code, section 3494, providing that all bills, bonds, etc., shall bear interest, unless interest was not to accrue until a specified time mentioned therein, makes no exception of insolvency proceedings, the holder of a note against an insolvent corporation

Nickey Bros. v. Lonsdale Mfg. Co.

was entitled to interest from maturity, though debtor had been adjudged an insolvent, and its assets were in the hands of a receiver. (*Post, p.* 405.)

Cases cited and approved: Atlanta National Bank v. Four States Grocer Co., 135 S. W., 1135; Gillett v. Chicago Title & Trust Co., 230 Ill., 373; Blair v. Clayton Enterprise Co., 9 Del. Ch. 95; Van Frank v. St. Louis G. C. & Ft. S. Co., 88 Mo. App., 508; Tredegar Co. v. Seaboard Air Line R. Co., 183 Fed., 289; American Casualty Ins. Co.'s Cases, 82 Md., 535; New York Security & Trust Co. v. Lombard Investment Co., 73 Fed., 537.

Case cited and distinguished: Thomas v. Western Car Co., 149 U. S., 95.

8. **INTEREST. Statute makes duty to allow interest imperative.**

Shannon's Code, section 3494, providing that all bills, bonds, etc., shall bear interest from the time they become due, unless interest was not to accrue until a specified time, is imperative, and requires courts to allow interest in cases falling within it. (*Post, pp.* 407, 408.)

Cases cited and approved: Thompson v. French, 18 Tenn., 458; Williams v. Inman, 45 Tenn., 267; Settle v. Settle, 59 Tenn., 662; Davidson Co. v. Olwill, 72 Tenn., 34; Gibson County v. Rains, 79 Tenn., 24; Knights of Pythias v. Allen, 104 Tenn., 623; Railroad v. Fort, 112 Tenn., 455.

Code cited and construed: Sec. 3494 (S.).

9. **CORPORATIONS. Creditor held entitled to attorney's fee for collection of note in insolvency proceeding.**

Where notes given by a corporation before insolvency provided that, if they were placed in hands of attorneys for lawful collection, or had to be sued on, ten per cent. attorneys' fees should be added, though notes were not placed in hands of attorneys, or sued on, before insolvency, where it became necessary that holder employ attorneys to file a petition and represent it in insolvency pro-

ceeding to collect the notes, attorneys' fees could be recovered. (*Post, pp.* 408-410.)

Case cited and approved: Merrimon v. Parkey, 136 Tenn., 654.

Case cited and distinguished: Citizens' Nat. Bank & Trust Co. v. Thornton, 174 Fed., 762.

---

## FROM KNOX.

---

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. CHARLES HAYS BROWN, Chancellor.

GREEN, WEBB & COWAN and FOWLER & FOWLER, for City National Bank.

MITCHELL LONG, for receiver.

MR. JUSTICE HALL delivered the opinion of the Court.

The original bill in this cause was filed as a general creditors' bill against Lonsdale Manufacturing Company, and was duly sustained as such, and a receiver appointed thereunder; all creditors being required to intervene in said cause and prove their claim.

The City National Bank filed its petition setting up an indebtedness due it from the Lonsdale Manufacturing Company evidenced by its various notes aggregating the principal sum of $23,873.75, and the bank sought to realize on certain bonds which it holds as collateral security to said indebtedness. The receiver denied the right of the

bank to realize on said bonds, denied the validity of the pledge thereof to the bank, and the right of the bank to collect attorneys' fees and interest upon said notes was also denied.

The chancellor was of the opinion, and so decreed, that the bank was the legal holder of said bonds, and entitled to realize thereon as collateral security to its indebtedness, and also decreed that the bank was entitled to recover attorneys' fees and interest on the indebtedness owing to it.

From this decree the receiver prayed and perfected an appeal to the court of civil appeals. That court modified the decree of the chancellor, in so far as it adjudged that the bank was entitled to recover attorneys' fees and interest on said indebtedness.

The cause is now before this court upon writs of *certiorari,* sued out by both the bank and the receiver, for review.

By his first assignment of error the receiver insists that the court of civil appeals erred in affirming the holding of the chancellor that the deposit of the $35,000 of the first mortgage bonds, the property of the Lonsdale Manufacturing Company, with the City National Bank by L. H. Stone, the president of said company, was a legal and valid act, and that the bank was entitled to realize thereon as security for its indebtedness.

By his second assignment of error the receiver insists that the court of civil appeals erred in not holding and decreeing that the pledge and deposit of said bonds to the bank by the president of the manufacturing company, L. H. Stone, was without authority from the corporation

and contrary to the instructions given to said Stone by the board of directors of the manufacturing company respecting the control and disposition thereof; and contrary to the intent and purposes for which said bonds were issued, as shown by the resolution of the stockholders authorizing said bond issue, the resolution of the board of directors respecting the disposition thereof, and the mortgage or trust deed securing said bond issue.

By his third assignment of error the receiver insists that the court of civil appeals erred in not holding and decreeing that the pledge of said bonds to the bank was illegal and void, because at the time said mortgage was executed and said bonds pledged to the bank, Lonsdale Manufacturing Company was an insolvent corporation, and therefore the act of executing said mortgage or trust deed, and the pledging of said bonds while insolvent, was unlawful and void, because it constituted an overt act of insolvency upon the part of the corporation, and impressed all of its assets with a trust in favor of its creditors, and the pledge and deposit of said bonds, while thus insolvent, constituted an unlawful preference in favor of the bank as against the other creditors of said corporation, and operated as an unlawful and preferential diversion of the corporate assets to the payment of the indebtedness owing to the bank, to the exclusion of other creditors of said corporation.

By his fourth assignment of error the receiver insists that the court of civil appeals erred in taxing him with a portion of the costs of the cause.

The Lonsdale Manufacturing Company was a corporation chartered and organized under the laws of this State,

with its principal office and place of business near the city of Knoxville, and it was engaged in the manufacture and sale of furniture; L. H. Stone was its president, and owned practically all of its stock. Said corporation was indebted to the City National Bank of Knoxville in the sum of $23,873.75; said indebtedness being evidenced by promissory notes which were indorsed by the said L. H. Stone personally. At the time the notes were executed, and at the time Stone indorsed them, the property of the Lonsdale Manufacturing Company was unincumbered. The stockholders and directors of the Lonsdale Manufacturing Company decided to mortgage its property for the purpose of securing $75,000 of bonds, which it proposed to and did issue. The evidence shows that Mr. Stone, the president of the corporation, called on the cashier of the City National Bank and informed him that the manufacturing company was going to place a mortgage or deed of trust on its property to secure said bonds, and that the corporation was going to pay the bank's indebtedness in full; that he would deposit with the bank a certain portion of the bonds to secure the indebtedness which it held against the manufacturing company, provided the bank would agree to the placing of the deed of trust upon its property. The bank agreed. At the time of this conversation the notes owing to the bank by the manufacturing company were not due, and no demand was being made for their payment, or for further security. It appears, however, from the testimony of the cashier of the bank that, but for the agreement by the president of the manufacturing company to deposit said bonds with the bank as collateral security for the indebtedness held by it, it would

have demanded payment upon the maturity of the notes of said indebtedness, as the loans were made by the bank to the manufacturing company upon the faith of the fact that its property was unincumbered. The cashier of the bank testified that the bank would not have been willing to carry said indebtedness after the manufacturing company had incumbered its property.

The bonds were issued, and the deed of trust to secure them executed and placed of record. The minutes of the manufacturing company show that the deed of trust executed to secure these bonds was regularly and duly approved by the stockholders. This deed of trust contains the following provision:

"It is hereby agreed that the said issue of $75,000 of bonds hereby provided for shall, upon the signing and execution thereof, or as soon thereafter as practicable, be duly certified by said Fidelity Trust Company, trustee, and delivered by it to the order of the president of this company; only such bonds as shall be certified by said trustee by the signing of the certificate indorsed thereon shall be secured by this mortgage or deed of trust or be entitled to any benefit or lien hereunder, and such certificate of said trustee shall be conclusive evidence that the bonds so certified have been duly issued hereunder and are entitled to the benefit of the trust hereby created.

"The trustee shall be fully protected in acting upon any certificate, statement, report, order, notice, request, consent, or other paper or document belived to be genuine and to be signed by the proper party, and the trustee shall not incur any liability on account of any act done or admitted to be done in good faith under the provisions of this trust deed."

This trust deed contains the further provision: "Whereas, the company desires to borrow money for the transaction and development of its business and the exercise of its corporate rights and privileges, and the acquisition of additional working capital and for other lawful corporate purposes, and for the purposes aforesaid is about to make and issue its first mortgage bonds of the form and tenor and effect hereinafter set forth in the aggregate amount of $75,000; and

"Whereas, the stockholders of said company, in a special meeting duly and lawfully convened and held, have authorized and directed its board of directors to sell and issue for corporate purposes its said bonds in the amount of $75,000," etc.

After the issuance of the bonds, and about the time the deed of trust was recorded, Mr. Stone, president of the manufacturing company, mailed to the Fidelity Trust Company a number of said bonds, and directed the trust company to deliver $35,000 of the bonds to the City National Bank, and to deliver $2,500 of the bonds to Mr. Fisher and Mr. Roth each. From Mr. Fisher and Mr. Roth the trust company was directed to collect an amount equal to the face value of the bonds delivered to them, and to deposit the amount so collected with the City National Bank to the credit of the Lonsdale Manufacturing Company. All of this the trust company did. The City National Bank was instructed by Mr. Stone, as president of the manufacturing company, that said $35,000 of bonds were deposited with it as collateral security for the indebtedness owing, the bank by the manufacturing company, and the bank was further instructed by Stone to

sell the bonds, or so many of them as it could, at par, and credit the amount received on the notes which the manufacturing company owed the bank until said notes were paid; and Mr. Stone agreed to assist the bank in selling said bonds. These bonds were deposited with the bank February 6, 1922, and at that time the indebtedness owing by the manufacturing company to the bank was not due, and the bank was making no demand for payment of said indebtedness. The evidence shows that the notes held by the bank were afterwards renewed by the secretary and treasurer of the manufacturing company, and the bonds were continued to be held by the bank as collateral security for said indebtedness, but, so far as appears from the proof, no new contract was made with reference to them. The cashier of the bank, however, testified that the notes were renewed upon the faith of the bonds that were being held as collateral security for said indebtedness. On these facts, is the bank entitled to realize on said bonds as security for its indebtedness?

In support of his assignments of error, the receiver insists that the president of a corporation has no power, by virtue of his office alone, to control the corporation's property or its management. · This is unquestionably true, but the question in this cause is, Was Mr. Stone, as president of the manufacturing company, vested with such power by the stockholders and directors of the manufacturing company? We think he was. The deed of trust expressly provided that, upon the issuance of said bonds or as soon thereafter as practicable, they be duly certified by the trustee named in said deed of trust, and delivered by it to the order of the president of the manu-

facturing company, and that such certificate of said trustee shall be conclusive evidence that the bonds so certified have been duly issued thereunder and are entitled to the benefit of the trust thereby created.  It also appears from the provisions contained in said deed of trust, hereinbefore set out, that the bonds were issued that the corporation might borrow money for the transaction and development of its business, etc., and "for other lawful corporate purposes."  The president of the corporation was authorized to dispose of the bonds at not less than par, and upon "such terms as the president may deem advisable and for the best interest of the corporation; the proceeds of said bonds to be used for corporate purposes only."  The pledging of the bonds to secure a debt owing by the corporation was a lawful, corporate purpose.  The president was authorized to dispose of the bonds at not less than par through a trust company or "other agency."  When he deposited the bonds with the bank, he directed the bank to sell the bonds at not less than par, and apply so much of the proceeds as was necessary to the payment of its debt.  The fact that the president of the manufacturing company was also a personal indorser on the notes in question can make no difference.  The notes were the obligations of the manufacturing company, and, while they were not due when the deed of trust was executed, and the bank at that time could not have enforced their payment, and could not have prevented the manufacturing company from placing the deed of trust on its property, it was reasonable for the president of the corporation to assume that the bank made the loan on the faith of the company's unincumbered assets, and would not want to

continue the indebtedness with the manufacturing company's assets incumbered by the deed of trust which was executed, unless its indebtedness was secured by the bonds to be issued, or in some other satisfactory manner. Had Stone been compelled to pay the notes he then would have had the same rights against the manufacturing company that the bank previously had.

In the case of *Hunt* v. *Memphis Gaslight Co.*, 95 Tenn., 144, 146, 31 S. W., 1008, it is said:

"It is next insisted by the complainants that, by the terms of the resolutions adopted by the stockholders, under which the issue of the $160,000 of bonds was authorized, it was contemplated that these bonds were to be sold for cash, and the proceeds used to liquidate the floating debt of the company, and that the board of directors, in breach of its duty, pledged these bonds to secure debts due to some of the directors, and to secure others as accommodation indorsers.

"There is no doubt but that it was contemplated by the stockholders, and the directors as well, that these bonds should be sold; but the evidence shows that the directors used all reasonable endeavors to accomplish this end, but failed.

"The resolution recites that the floating indebtedness of the company then amounted to $135,134.80, the validity of which is in no part impeached by complainants. The resolution also recites that, in making necessary improvements, additions, and extensions, it would be necessary to expend $25,000 in addition to the above; hence, the issue of the $160,000 second mortgage bonds was authorized. Of the $135,134.80, only about $11,000 was due to directors,

the balance being due to the banks, and third persons who were clamorous for payment. Many propositions looking to a placing of these bonds among the stockholders were made and discussed, and attempts were also made in an endeavor to effect a consolidation with the equitable Gaslight Company, the rival in business of the Memphis Gaslight Company, through the American Debenture Company of New York; but the debenture company failed in business, and all efforts to extricate the Memphis Gaslight Company through these means proved abortive.

"In order to quiet creditors, the bonds, from time to time, were pledged to secure the various creditors holding the floating indebtedness above mentioned. Complainants insist that this pledge was a misapplication of the bonds, *ultra vires,* and void, but the reverse has been decided in this State, and we adhere to that opinion. *Baxter* v. *Washburn,* 8 Lea, 1-15. See, also, *Dunscombe* v. *Railroad,* 84 N. Y., 190."

It appears from the evidence that the manufacturing company had been unable to sell the bonds in question, except $5,000 of them to Mr. Fisher and to Mr. Roth, though they had been duly advertised in the daily papers of Knoxville for some time, and sales of them had been solicited personally by Mr. Stone, president of the company, among his friends and acquaintances. So far as the record discloses none of the bonds were ever sold except those sold to Mr. Fisher and Mr. Roth.

In *Baxter* v. *Washburn,* 8 Lea (76 Tenn.), 17, this court said: "The intention was undoubtedly to sell the bonds, and pay the debts of the company, including the debt of complainant, out of the proceeds of sale, but the record

shows that the parties were unable to carry out the intention because the bonds could not be sold. The pledgees, not being able to realize by a sale, have the right to enforce the bonds themselves against the company and the trust fund to the extent of their respective demands."

Neither can we assent to the contention of the receiver that the pledge and deposit of said bonds to the bank was illegal and void, because, at the time the deed of trust was executed and the bonds pledged to the bank, the manufacturing company was an insolvent corporation; and the act of executing the deed of trust and pledging the bonds constituted an overt act of insolvency, and impressed the assets of the manufacturing company with a trust in favor of its creditors, and therefore that the pledge of said bonds constituted an unlawful preference in favor of the bank as against the other creditors of the manufacturing company. It is true that, at the time the deed of trust was executed by the manufacturing company, its liabilities slightly exceeded its assets, but the undisputed proof is that it was a going concern, engaged in conducting its business in the usual and ordinary way. It had not been guilty of any overt act of insolvency.

No case has been cited by counsel for the receiver, and we do not know of any, which holds that the execution by a corporation of a deed of trust while it is still a going concern, for the purpose of securing bonds issued by it, constitutes an act of insolvency. It is true that the rule is well established in this State that the assets of an insolvent corporation become, from the date of its assured insolvency, a fixed trust fund for equal *pro rata* distribution among its creditors. *Memphis Barrel Co.* v. *Ward,*

99 Tenn., 177, 42 S. W., 13, 63 Am. St. Rep., 825. But it is also true that there must be some positive act of insolvency, such as the filing of a bill to administer its assets, or the making of a general assignment, or a cessation of business. *Comfort* v. *McTeer,* 7 Lea, 660; *Bank* v. *Lumber & Manufacturing Co.,* 91 Tenn., 12, 18 S. W., 400; *Tradesman Publishing Co. v. Car Wheel Co.,* 95 Tenn., 634, 32 S. W., 1097, 31 L. R. A., 593, 49 Am. St. Rep., 943; *Voightman* v. *Railroad,* 123 Tenn., 452, 131 S. W., 982, Ann. Cas., 1912C, 211.

The bank is entitled to realize on these bonds for another reason. We think the bank is a holder of them in due course and for value. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand, or at a future time. Shannon's Code, section 3516a33.

A bond is a negotiable instrument, and title passes by delivery. This was recently held by this court in the case of *Nickey Bros.* v. *Lonsdale Manufacturing Company,* 257 S. W., 403, in which case the title of the Union National Bank to some of these bonds was involved; that case being decided at the present term of this court.

This court has recently held in the case of *Snyder* v. *McEwen,* reported in 256 S. W., 434, that a payee may be a holder in due course.

The assignments of error urged by the receiver will, for the foregoing reasons, be overruled.

We now come to a consideration of the assignments of error relied upon by the bank.

It is first insisted that the court of civil appeals erred in its holding that the bank could not recover interest

accruing after maturity of the notes held by it against the manufacturing company.

It is next insisted that the court of civil appeals committed error in holding that the bank was not entitled to collect attorneys' fees on the notes involved. The insolvency proceeding against the manufacturing company was instituted May 4, 1922, and the bill was sustained as a general creditors' bill May 8, 1922. The notes held by the bank had not matured at that time, and no interest was due thereon.

The notes contained the following provision with reference to attorneys' fees:

"The undersigned principal and indorsers of this note, which is filled up before signing, agree that, if this note is placed in the hands of an attorney at law for collection, or has to be sued on, they will pay ten per cent. attorneys' fees in addition to the principal which shall be added and become a part of the judgment."

Neither the claim for interest nor attorneys' fees had accrued on the date the bill was filed and sustained as a general creditors' bill. It is therefore the position of the receiver that a claim to be provable against an insolvent in a general creditors' proceeding must have been in existence on the date the insolvency proceeding was instituted; that is, the date on which the *status* of the creditor is fixed; that from that date on, by operation of law, the assets of the insolvent are subject to *pro rata* distribution among the creditors whose claims are in existence at that time. In other words, that the creditors become the equitable owners of the assets of the insolvent as of the date of the filing of the bill.

In *Thomas* v. *Western Car Co.*, 149 U. S., 95, 13 Sup. Ct., 824, 37 L. Ed., 663, it was said:

"As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate."

To the same effect is the rule announced in *Atlanta National Bank* v. *Four States Grocer Co.* (Tex. Civ. App., 1911), 135 S. W., 1135; *Gillett* v. *Chicago Title & Trust Co.*, (1907), 230 Ill., 373, 82 N. E., 891; *Blair* v. *Clayton Enterprise Co.* (1910), 9 Del. Ch., 95, 77 Atl. 740; *Van Frank* v. *St. Louis G. C. & Ft. S. Co.* (1901), 88 Mo. App., 508; *Tredegar Co.* v. *Seaboard Air Line R. Co.* (1910), 183 Fed., 289, 105 C. C. A., 501; *American Casualty Insurance Co.'s Cases* (1896), 82 Md., 535, 34 Atl., 778, 38 L. R. A., 97; *New York Security & Trust Co.* v. *Lombard Investment Co.* (C. C., 1896), 73 Fed., 537.

It would seem that in these cases no statute was involved making the payment of interest imperative. In this State we have a statute (section 3494 of Shannon's Annotated Code), which provides as follows:

"All bills single, bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they became due, unless it is expressed that interest is not to accrue until a specific time therein mentioned."

It has been repeatedly held that the foregoing statute is imperative on courts allowing interest in cases falling within it, for, whenever the statute applies, the rule that interest follows as a matter of law is imperative, and it

is not a matter within the discretion of the court or jury. *Thompson* v. *French,* 10 Yerg., 458; *Williams* v. *Inman,* 5 Cold., 267; *Settle* v. *Settle,* 12 Heisk., 662-664; *Davidson County* v. *Olwill,* 4 Lea., 34; *Gibson County* v. *Rains,* 11 Lea, 24; *Knights of Pythias* v. *Allen,* 104 Tenn., 623, 58 S. W., 241; *Railroad* v. *Fort,* 112 Tenn., 455, 80 S. W., 429.

We are of the opinion, therefore, that the court of civil appeals erred in holding that the bank was not entitled to interest on its indebtedness from the date of its maturity, notwithstanding the manufacturing company had on that date been adjudged an insolvent, and its assets were in the hands of a receiver. The statute makes no exception of insolvency proceedings.

On the question of whether or not the bank is entitled to collect attorneys' fees on its indebtedness, it will be noted that each of the notes involved expressly provides on its face "that if this note is placed in the hands of an attorney at law for collection, or has to be sued on, that they (principal and indorsers) will pay ten per cent. attorneys' fees in addition to the principal which shall be added and become a part of the judgment."

It was held by this court in *Merrimon* v. *Parkey,* 136 Tenn., 654, 191 S. W., 327, that an attorney's fee so provided for in a note is a constituent part of the obligation, enforceable by or in behalf of the holder, and it is not considered to be a distinct obligation or penalty to be enforced in behalf of the attorney, or as a separate cause of action.

It being expressly provided in the notes here involved that, if they should be placed in the hands of an attorney for collection, or if it should become necessary to bring

suit on them the principal and indorsers agree to pay ten per cent. attorneys' fees in addition to the principal, we are of the opinion that the bank is entitled to the benefit of such provision, notwithstanding the notes were not placed in the hands of an attorney for collection or sued on, before the date the manufacturing company was adjudged an insolvent. It does appear that it was necessary for the bank to employ attorneys to file a petition and represent it in said insolvency proceeding for the purpose of collecting said notes. We therefore think the court of civil appeals erred in holding that the bank was not entitled to recover attorneys' fees, as provided for in said notes. We do not understand that it is disputed that it was necessary for it to employ attorneys in the insolvency proceeding to present and have its indebtedness enforced against the insolvent.

We have examined the case of *Citizens National Bank & Trust Co.* v. *Thornton,* 174 Fed., 762, 98 C. C. A., 488, which case is relied upon by the receiver to support the holding of the court of civil appeals. In that case a national bank was being administered as an insolvent, and the court said:

"A national bank is an instrumentality of the government, whose administration is vested in the comptroller of the currency, who, in case of insolvency, appoints a receiver and directs his acts. The statutes provide a complete system for the administration of the assets of an insolvent bank, which are trust funds in the hands of the comptroller. Their purpose is to put upon him the duty of getting in the assets and paying therefrom, ratably, all the just claims against the insolvent bank, according

to their priorities and equities. The statutes do not contemplate that the assets in his hands are to be charged with the expense of creditors in establishing the validity of their claims, otherwise than as the general law allows them to be taxed in their favor, as in the case of other successful suitors, and then such costs are a part of the general expense of administration, which is to be deducted from the assets before dividends are declared."

It would seem that the holding in that case was controlled by the construction given the statutes applicable to national banks; it being held that it was not contemplated by said statutes that the assets in the hands of the comptroller of the currency should be charged with the expense of creditors in establishing the validity of their claims. That case is not, therefore, controlling.

It results that the judgment of the court of civil appeals will be modified in the particulars indicated. In all other respects it will be affirmed, except as to costs. The entire costs of the cause will be taxed against the receiver of the manufacturing company, and will be paid out of the funds now in his hands, or which may hereafter come into his hands.